Lillian **MARTINEZ**, Plaintiff,

v.

The **CITY OF STOCKTON**, et al., Defendant.

No. Civ S–89–0547 EJG GGH.

United States District Court, E.D. California.

Oct. 18, 1990.

Claudia W. Brisson, San Francisco, Cal., for plaintiff.

J. Anthony Abbott, Mayall, Hurley, Knutsen, Smith & Green, Stockton, Cal., for defendant.

## ORDER

GREGORY G. HOLLOWS, United States Magistrate.

*Introduction*

This case involves a claim by plaintiff that her decedent died as a result of excessive force utilized by police during an arrest of her decedent. On Friday August 17, 1990, the parties appeared in this court to argue plaintiff's motion to produce documents from the Stockton police personnel and Internal Affairs files. Claudia W. Brisson represented the plaintiff; J. Anthony Abbott represented the defendant. The court issued an order on August 25, 1990, which in part instructed counsel to prepare for a Fed.Rule of Civ.Pro., Rule 26(f) dis-

covery conference which was held on October 12, 1990. Because of the importance of the discovery issues raised in this "excessive force" 42 U.S.C. § 1983 case and because the recent change in "excessive force" substantive law significantly changes the discovery which should be allowed in such cases, the court writes an order inclusive of its previous order and the results of the Rule 26 conference. That part of the August 25th order which set forth the details of the Rule 26(f) conference, and the protective order fashioned for this case, is set forth in the Appendix to this order.

*Background*

This action was originally filed on April 18, 1989, by Lillian Martinez in her individual capacity for the wrongful death of her brother, Alphonso Dutra, and in her capacity as the administrator of the Dutra estate for section 1983 violations. The action arises out of the alleged police brutality suffered by Dutra in his arrest on April 29, 1988. On that day, at approximately 3:05 p.m., Dutra was arrested outside of his apartment building for allegedly violating section 11352 of the California Health and Safety Code (sale of heroin).

Stockton police officer Joseph Rocha had set up a buy from Dutra at Independence Park in Stockton. The purchase was eventually made in the hallway of Dutra's apartment complex. After the purchase was made, Rocha identified himself as a police officer and Dutra fled. He was caught in the street outside his building by Rocha and Officers Townes and Sandoval, who were hiding in the hallway of the building observing the transaction. Dutra was driven to the Stockton Police Facility by Officer Trullson.

After he was booked, Dutra was taken to the county jail for incarceration. There, he was examined by a nurse and cleared for admission. On May 4, 1988, Dutra was found unconscious in his jail cell. He was then taken to the hospital where doctors operated in an attempt to stop internal bleeding.

On or about May 9, 1988, Dutra died of hemorrhaging allegedly caused by actions taken while he was under the custody and control of the Stockton City Police and the San Joaquin County Jail.

On July 25, 1989, plaintiff filed her first amended complaint, therein alleging that four named police officers, defendants Rocha, Townes, Sandoval, and Trullson caused Dutra's death by kicking him in the stomach.

Plaintiff's original request for production of documents, which set forth eleven categories of requested documents, has been complied with in part by the defendant. The defendant refused to produce the materials sought by the following requests.

**Request Number 1:** Produce all records concerning the decedent Alphonso Dutra with the Stockton Police Department, including the materials produced by the City of Stockton Internal Affairs Unit, specifically including the statements of Officers Townes, Rocha, Sandoval, and Trullson.

**Request Numbers 2, 3, 4, and 5:** Produce the entire personnel files and records, including complaints, disciplinary records and Internal Affairs records concerning claims of excessive force, brutality, discrimination, racism, abuse of power, or any other police misconduct by defendant-Officers Townes, Sandoval, Trullson, and Rocha.

**Request Numbers 8:** Produce all records held by the City of Stockton including the records concerning the investigation into the death of the decedent Alphonso Dutra, including the objective materials stated to be withheld in the Defendants' Response to Request Number 1. Specifically, this category again requests the Internal Affairs investigation statements of Officers Townes, Rocha, Sandoval, and Trullson.

Through its counsel, the City of Stockton objected to production of the law enforcement personnel records on the basis of section 832.7 of the California Penal Code:

Peace officer personnel records and records maintained pursuant to section 832.5 [citizen's complaints investigations], or information obtained from these records, are confidential and shall not be disclosed in any criminal or civil proceeding except by discovery pursuant

to sections 1043 and 1046 of the Evidence Code. This section shall not apply to investigations or proceedings concerning the conduct of police officers or a police agency conducted by a grand jury or a district attorney's office.

The City also claimed that section 1040 of the California Evidence Code precluded the disclosure of the requested information, or as a last argument, that plaintiff's counsel had not satisfied the requirements for disclosure set forth in §§ 1043, 1045.

Pursuant to this court's order filed July 17, 1990, this court directed the defendant to submit the above requested material for the purpose of an *in camera* review. The court stated that the documents would be examined for the purpose of determining which documents, if any, shall be ordered released to plaintiff pursuant to her discovery requests. The court further ordered that the defendant Bate stamp each of the submitted documents so as to afford the court a means of identifying those documents which may eventually be ordered released to the plaintiff. In response to the court's order, the defendant submitted approximately 2000 documents. They were numbered as follows:

RECORDS OF THE CITY OF STOCKTON PERSONNEL DEPARTMENT

| | |
|---|---|
| Records of Officer Joseph Rocha | pp. 1–99 |
| Records of Officer Albert Paul Sandoval | pp. 100–224 |
| Records of Officer Michael Allen Townes | pp. 225–391 |
| Records of Officer Jon Cristor Trullson | pp. 392–591 |

RECORDS OF THE STOCKTON POLICE DEPARTMENT PERSONNEL OFFICE

| | |
|---|---|
| Records of Rocha | pp. 592–679 |
| Records of Sandoval | pp. 680–783 |
| Records of Townes | pp. 784–788 |
| Records of Trullson | pp. 900–1022 |

RECORDS OF THE STOCKTON POLICE DEPARTMENT INTERNAL AFFAIRS DIVISION (EXCLUSIVE OF RECORDS PERTAINING TO ALPHONSO DUTRA)

| | |
|---|---|
| Records of Rocha | pp. 1023–1153 |
| Records of Sandoval | pp. 1154–1243 |
| Records of Townes | pp. 1244–1298 |
| Records of Trullson | pp. 1299–1595 |

RECORDS OF THE STOCKTON POLICE DEPARTMENT INTERNAL AFFAIRS DIVISION INVESTIGATION OF THE DEATH OF ALPHONSO DUTRA

| | |
|---|---|
| Transcripts of interviews with Rocha, Sandoval, Townes and Trullson | pp. 1876–1960 |
| | pp. 1979–1981 |

The documents can be characterized as falling within three main descriptive categories: (1) those documents dealing with the internal investigation of the events at issue; (2) those documents referencing other citizen's complaints against the defendants; and (3) the individual defendant's routine personnel folders. Within the first two categories, a further logical breakdown is evident: statements of the defendants themselves; third party evidence (includes documents as well as testimony); and the analysis of Internal Affairs and management. This description becomes important in attempting to assess the relevance of the information as opposed to the strength of the need to withhold the information.

On August 25, 1990, the court issued a preliminary order which requested the parties to meet and later file a statement pursuant to Rule 26(f) concerning further use of these documents in discovery. *See,* appendix. The documents were released to plaintiff under a strict protective order. *See,* appendix. The court reviewed the documents *in camera* prior to the October 12, 1990, Rule 26(f) conference.

*Discussion*

The parties have directed the court to relevant law, especially with their citation of *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal.1987), which applies and expands the reasoning in *Kerr v. U.S.D.C. (N.D. Cal.),* 511 F.2d 192 (9th Cir.1975) *aff'd on procedural grounds,* 426 U.S. 394, 96 S.Ct. 2119, 48 L.Ed.2d 725 (1976). *Kelly* exhaustively analyzed the issue of state privilege to withhold confidential law enforcement documents and determined that it was an "official information" privilege which limits the accessibility of such documents under a 42 U.S.C. § 1983 action in federal court. The court ultimately applied a balancing test to determine whether the needs of the litigation outweighed the limited privilege. Much of what *Kelly* holds is relevant here; however, intervening substantive law in the § 1983 "excessive force" cases changes the result of the bal-

ancing discussed in *Kelly* in the area of discovery of police officer's prior "bad acts" (discovery of previous complaints and disciplinary matters). The court also believes that the privacy rights of individuals plays a part in the analysis. The remainder of this opinion discusses the balancing process and the result in this case.

### A. The General Balancing Test

■ The Ninth Circuit has held that federal discovery law applies to § 1983 actions. *Kerr v. U.S.D.C., supra.* However, nothing in *Kerr* requires this court to ignore pertinent state authority; nothing in *Kerr* precludes the application of state rules when that application would not be inconsistent with federal law.

All the parties herein are California residents, and the events at issue took place in California. The discovery at issue (reports, investigations, routine personnel documents) was prepared in California pursuant to the expectation that California law would govern its disclosure. The very claim of plaintiff requires the presence of state action. It would be odd if state privilege principles were determined to be totally irrelevant here.

The court has reviewed the California statutory scheme for the withholding/disclosure of confidential law enforcement personnel records and files. These statutory provisions are not inconsistent with federal discovery law and privileges and provide the appropriate balancing of interests for the determination to be made here. This is especially true since the California statutes evidence absolutely no intent to be a subterfuge to avoid the federal civil rights laws.

In reviewing the California statutory procedures, one discovers the same blend of federal analysis that appears in the federal cases concerning the privileges of official (confidential) information, deliberative pro-

cess, and privacy. *See, Kelly* at 656–659. Section 1040 is the general privilege section which gives entities collecting confidential information the right not to disclose such information if the disclosure is otherwise prohibited by statute or is against the public interest.[1] The statute at issue here, Cal.Penal Code § 832.7, does not authorize a blanket withholding but, in turn, allows only a limited withholding, re-directs parties back to the Evidence Code, and provides that discovery efforts are to be undertaken in compliance with provisions in the Evidence Code. The Evidence Code procedures found in Cal.Evidence Code §§ 1043, 1046 [and by necessary implication § 1045] provide for a balancing of the needs of the litigation versus the need to keep the information confidential and the right of privacy for the individuals involved.

(a) Nothing in this article shall be construed to affect the right of access to records of complaints, or investigations of complaints, or discipline imposed as a result of such investigations, concerning an event or transaction in which the peace officer participated, or which he perceived, and pertaining to the manner in which he performed his duties, provided that such information is relevant to the subject matter involved in the pending litigation.

(b) In determining relevance the court ... shall exclude from disclosure:

(1) [information occurring five years before the event which is the subject of the litigation];

(2) In any criminal proceeding the conclusions of any officer ...

(3) Facts sought to be disclosed which are so remote as to make disclosure of little or no practical benefit.

Cal.Evidence Code § 1045.

The statute goes on to provide that information discoverable from another source may obviate the need for disclosure, and

---

1. Section 1040(b) of the Cal.Evidence Code provides:

A public entity has a privilege to refuse to disclose official information, and to prevent another from disclosing such information, if the privilege is claimed by a person autho-

rized by the public entity to do so and ... (2) disclosure of the information is against the public interest because there is a necessity for preserving the confidentiality of the information that outweighs the necessity for disclosure in the interest of justice ...

the statute allows as well for the issuance of a protective order to limit the disclosure of otherwise confidential information. California courts have been careful not to unnecessarily release confidential/private material. *See, City of Los Angeles v. Superior Court*, 33 Cal.App.3d 778, 109 Cal.Rptr. 365 (1973).

Indeed, the state disclosure provisions result in a balancing of interests similar to the interests balanced "federally" in *Kelly*. When one can harmonize the provisions of state privilege with federal discovery law in a lawsuit which challenges the activities of state actors, it only makes sense to apply the state law. *Socialist Worker's Party v. Grubisic*, 619 F.2d 641, 643 (7th Cir.1980). Subject to the important limitation discussed in the following section, the court will therefore apply the substance of the California provisions.[2]

Finally, the overall balancing provisions contained within Fed.Rule of Civ.Pro., Rule 26(b) are applicable to this discovery situation. The court must carefully assess the request for discovery in light of the expense to the parties, the needless proliferation of issues, and the remoteness of sought discovery to the issues in the case.

### B. Discovery of Prior Bad Acts To Prove Malicious or Sadistic Intent In An "Excessive Force" Case Should Generally Not Be Allowed

At the time *Kelly* was decided, it was routine practice for a § 1983 "excessive force" plaintiff to request information relating to prior bad acts, i.e., prior (and subsequent) complaints of excessive force in arrest situations, disciplinary action, internal affairs, investigations, and the like. This was so because an element of the plaintiff's proof in such a case was a mali-

cious or sadistic intent to cause harm to the arrestee. *Rinker v. County of Napa*, 831 F.2d 829, 831–832 (9th Cir.1987) citing *Johnson v. Glick*, 481 F.2d 1028 (2d Cir. 1973). Although "bad acts" evidence was inadmissible to demonstrate the character of a defendant or his predisposition to commit a crime/tort, admission of prior bad acts of a similar nature committed by the arresting officer/defendant was logically relevant to establish the required intent for the alleged offense. Fed.Rules of Evidence, Rule 404(b). *See generally United States v. Miller*, 874 F.2d 1255, 1268 (9th Cir.1989).

However, the Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) determined that the only proper frame of reference for the adjudication of excessive force arrest cases was the Fourth Amendment "reasonableness" standard, i.e., what would the reasonable officer have done under the circumstances. Evidence of evil intent or sadistic motive has "no proper place in [the] inquiry." *Id.* at 1873. The Ninth Circuit has applied that holding retroactively, *Reed v. Hoy*, 909 F.2d 324, 328 (9th Cir.1989). *See also, Eberle v. City of Anaheim*, 901 F.2d 814 (9th Cir.1990).

█ It logically follows that if evidence of evil intent has "no place in the inquiry" at trial, the gathering of that evidence is not necessary in discovery. The time consuming and controversial plunge into the past complaint records of arresting police officers can and should be averted as a general rule. Discovery in § 1983 cases in the area of excessive force is thus greatly simplified.

[3] There are two caveats to the above stated general rule. The first is that when

---

**2.** The defendants make a passing reference to their right to privacy under the California Constitution which would not authorize a disclosure of their personnel documents. However, this general right to privacy in litigation matters, explained very well in *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 187 Cal.Rptr. 4 (1982), is not an unlimited one. This court sees no meaningful distinction between the general balancing test set forth in *Moskowitz* and the balancing test set forth in the specific statutory

scheme under discussion as interpreted by *City of Los Angeles, supra.*

While the federal courts have not developed a privacy in litigation right to the same extent as California, there is an embryonic movement in that direction. *See, Cook v. Yellow Freight*, 132 F.R.D. 548 (1990). It is clear that the federal right to privacy in litigation matters would also be a limited one subject to the same type of balancing performed herein. *Id.*

a municipality or county is named in the excessive force suit, the evidence used against the city may necessarily include evidence of past misconduct on the part of its officers. This is so because a municipality cannot be liable for the § 1983 claim unless it has fostered or ratified the actions of its lower personnel to the point where the alleged violation is a custom or policy of the municipality. *Davis v. City of Ellensberg,* 869 F.2d 1235 (9th Cir.1989). Even in this situation, however, it should not be necessary to engage in discovery with the thought of retrying the merits of past allegations; it should be sufficient in most cases to discover the record of the past incidents, present those records to the pertinent municipal supervisors or one's experts in discovery, and arrive at a conclusion regarding the municipality's liability.

The second exception to the general rule concerns allegations of punitive damages. The Supreme Court and appellate courts since *Graham* have been silent on this aspect of § 1983 claims with respect to the recently changed liability standard. Plaintiffs can only recover punitive damages if there is evidence of evil motive or a reckless disregard for the constitutional rights of others. *Smith v. Wade,* 461 U.S. 30, 51, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). The cases that have dealt with punitive damage claims in light of the *Graham* standard have simply assumed the point that "intent" evidence is relevant without discussion. *See, Moody v. Ferguson,* 732 F.Supp. 627 (D.S.C.1989); *Pastre v. Weber,* 717 F.Supp. 992 (S.D.N.Y.1989) aff'd, 907 F.2d 144 (4th Cir.1990).

■ Assuming the propriety of introducing intent evidence in a *Graham* Fourth Amendment context, because the liability claim is allied with a claim for punitive damages, this second exception does not demand complete disbanding of the general rule. This court believes that discovery of an officer's past record (with the attendant possibility that all of these incidents will become trials within themselves) should only be permitted when: (1) the allegations of the complaint, if proved, would probably

result in a punitive damage award, and (2) review of the sought discovery (preferably *in camera*) would indicate that there is a reasonable possibility that the potential discovery would lead to a verdict of punitive damages. This rule would comport with the notion of "balancing" the need for discovery with the official information privilege and an individual's privacy rights. Such a rule would also comport with the balancing necessary under Rule 26(b).

*C. Application of the Above Law to the Facts of This Case Results In A Limited Discovery*

1. Personnel Records

■ The first general category of documents are the "non-disciplinary" personnel records of the individual defendants. These records, which have been submitted for *in camera* review, are composed of performance evaluations, training records, and other miscellaneous personnel documents. Plaintiff claims a need for these documents in order to attack the training provided to these officers in light of her allegations against the City of Stockton.

The court has determined that the proper balancing here allows only a limited use of the records in discovery. Subject to the Protective Order contained in the Appendix, plaintiff will be allowed to submit the personnel records to her expert for analysis. This expert will be subject to discovery by the defendants. Plaintiff may also use the personnel records in deposition with the individual officers. Only those records pertaining to the particular officer/deponent may be used in the officer's deposition. Finally, those supervisors in the Stockton Police Department with responsibility for training may be deposed on the records.[3]

2. Internal Affairs Records (Other Incidents)

■ The court has closely reviewed the records associated with complaints against the defendants for alleged excessive force with respect to arrests. The file contains records relating to 10 complaints in the

---

**3.** Defendants may make similar use of the records.

fairly recent past directed at the individual defendants. None of the charges were found to have merit by the Stockton P.D., and the defendants herein were either "exonerated" or the charges were "not sustained." In light of *Graham*, and the general balancing tests, the court refuses to allow discovery into the past incidents except as noted herein. Allowance of unlimited discovery would not only greatly expand this case, but unlimited discovery does not recognize the strong principles of privacy associated with these sensitive records.

Neither will plaintiff's claims for punitive damages overcome the factors weighing in favor of non-discovery. Although plaintiff's allegations herein, if proved, would probably result in a verdict of punitive damages, the record of the past incidents as noted above would not render such a result "reasonably possible." Plaintiff cannot argue that the records themselves aid her case—just the opposite is true. In order for the past incidents to be pertinent to plaintiff's claims, plaintiff would have to disprove many of the facts which led to the exonerations of the defendants. The court is unwilling to allow plaintiff to attempt to disprove in this litigation the findings of ten previous fact intensive investigations on the purely theoretical hope that some of the facts would be proven in her favor.

As an alternative grounds for denying this fact intensive discovery, the court finds that plaintiff's counsel did not specify the precise plan for further discovery utilizing the requested documents as required by the August 25th order. In the absence of the required plan, the court is unwilling to simply allow the parties to set unchartered sail on a vast discovery sea of past incidents.

■ However, all but two of the investigations may be relevant to plaintiff's claim against the City of Stockton—

[t]hat the City failed to adequately supervise its officers, and that the City of Stockton has not established a procedure to investigate citizen's complaints, and failed to make written procedures con-

cerning citizen's complaints, available to the public ...

Rule 26 Statement at 4.

It is apparent to the court that limited discovery can be performed without active discovery on all the underlying facts of the past incidents. Again, subject to the Protective Order, discovery of these investigations by plaintiff's expert will be permitted. Plaintiff may show these records to the managing supervisors in deposition discovery and confront them with the records. The records are not to be used in discovery with other persons, including the individual defendants.[4]

Finally, no discovery may be had at all with respect to the complaints contained at Bate stamped pages 1219–1243, and 1299–1298. The allegations in those past incidents relate only to rude remarks. Discovery related to a "rude remarks" investigation is not reasonably calculated to lead to evidence useful to plaintiff's wrongful death, civil rights case, especially in light of the balancing considerations.

### 3. Internal Affairs Investigation (The Incident At Bar)

■ The court has scrutinized the Internal Affairs reports related to the incident at bar and has determined that the relevancy of the statements and other evidence contained therein outweighs the need to keep such investigations from the scrutiny of discovery. Plaintiff would be unfairly hampered in determining the facts of this case and the credibility of the individual defendants if precluded from discovery. The court will permit all reasonable discovery, including third party discovery, of the records of this incident. Again, such discovery is subject to the Protective Order.

IT IS SO ORDERED.

### APPENDIX A

At this time, the parties are necessarily more familiar with the details of the case than this court. The parties have submitted over 2000 pages of documents and have asked the court to finally determine

---

**4.** Defendants may make similar use of the    records.

what can be used in further discovery/trial and what may not be disclosed. Neither of the parties have attempted to particularize just which documents are necessary for the case and what documents should be withheld from any disclosure. While plaintiff desires full disclosure, defendants desire no disclosure. It follows that plaintiff will be seeking a voluminous amount of further discovery on the documents disclosed, and defendants will be seeking no further discovery. The court is not about to finally determine what is relevant to this litigation or privileged (and what further discovery is necessary) without the parties attempting a good faith effort in assisting the court.

Therefore, the parties are ordered to appear at a Fed.Rules of Civil Pro., Rule 26(f) conference on October 12, 1990, and are further ordered as follows:

1. Defendants' counsel shall turn over all of the Bate stamped documents to plaintiff's counsel subject to the protective order set forth at length below;

2. Plaintiff shall review the documents and *both* counsel shall draft a joint Rule 26(f) statement specifying:

(a) the documents (or category of documents) that both believe are relevant to the case and warrant further disclosure and discovery subject to a "sealing" protective order;

(b) the documents (or category of documents) that are not the subject of agreement along with a concise argument from each counsel on each document or category of documents concerning the relevance of the document(s) to the issues in this lawsuit, the importance of maintaining a privilege with respect to the document(s) which would prevent disclosure (e.g. why it is necessary to protect: the confidential atmosphere of internal investigations, the privacy interests of third parties, and/or named defendants, and the deliberative process of city officials); the further discovery that is proposed to be undertaken with respect to the document(s).

3. No discovery (includes informal contact or investigation) of parties or non-parties with respect to material contained within the documents given to plaintiff's counsel by virtue of paragraph 1 shall be taken until the court approves the discovery statement submitted by counsel;

4. Defendants' counsel shall submit a declaration from the proper city authority stating that non-disclosure is necessary for the documents identified by counsel as being in dispute (paragraph 2); *see, Gill v. Manuel,* 488 F.2d 799, 803 (9th Cir.1973) (dealing with the assertion of an official information privilege in an excessive force § 1983 action).

5. The statement described in paragraph 2 signed by both counsel shall be submitted to the court no later than October 4, 1990; failure to submit the statement may result in the imposition of sanctions;

6. The parties shall abide by the protective order of this court issued below.

*Protective Order*

1. Prior to the discovery conference on October 12, 1990, plaintiff shall not disclose the documents or copies of the documents, or the substance of the documents to anyone (including her client) except secretarial staff necessary for the typing of the Rule 26 statement to be filed by the parties;

2. After the discovery conference, and the court's ruling on what documents may be used in discovery, the documents to be utilized in further discovery or proceedings are to be designated as "Confidential Material". Such designation shall be made by stamping or otherwise marking the material prior to use in this litigation as follows: "Confidential Material Subject To Protective Order".

3. Confidential Material shall be used solely in connection with this litigation and the preparation and trial of this case, or any related appellate proceeding, and not for any other purpose, including any other litigation.

4. Confidential Material may not be disclosed except as set forth in paragraph 5.

5. Confidential Material may be disclosed only to the following persons:

**(a)** Counsel for any party to this action;

**(b)** Paralegal, stenographic, clerical and secretarial personnel regularly employed by counsel referred to in (a);

**(c)** court personnel including stenographic reporters engaged in such proceedings as are necessarily incidental to preparation for the trial of this action;

**(d)** any outside expert or consultant retained in connection with this action, and not otherwise employed by either party;

**(e)** any "in house" expert designated by defendants to testify at trial in this matter;

**(f)** witnesses, other than the plaintiff herein, may have the documents disclosed to them during deposition proceedings; the witnesses may not leave the deposition with copies of the documents, and shall be bound by the provisions of paragraph 6.

Nothing in this paragraph (5) is intended to prevent officials or employees of the City of Stockton or other authorized government officials from having access to the documents if they would have had access in the normal course of their job duties. Further, nothing in this order prevents a witness from disclosing events or activities personal to them, i.e., a witness can disclose to others previous information given to the City of Stockton with respect to what he or she saw, heard, or otherwise sensed.

6. Each person to whom disclosure is made, with the exception of counsel who are presumed to know of the contents of this protective order, shall prior to the time of disclosure be provided by the person furnishing him/her such material a copy of this order, and shall agree on the record or in writing that he/she has read the protective order, and that he/she understands the provisions of the protective order. Such person also must consent to be subject to the jurisdiction of the United States District Court for the Eastern District of California with respect to any proceeding relat-

ing to enforcement of this order, including without limitation, any proceeding for contempt. Unless made on the record in this litigation, counsel making disclosure to any person described above shall retain the original executed copy of said agreement until final termination of this litigation.

7. At the conclusion of the trial and of any appeal or upon other termination of this litigation, all Confidential Material received under the provision of this order (including any copies made) shall be tendered back to the City of Stockton. Provisions of this order insofar as they restrict disclosure and use of the material shall be in effect until further order of this court.

8. The foregoing is without prejudice to the right of any party: (a) to apply to the court for a further protective order relating to any Confidential material or relating to discovery in this litigation; (b) to apply to the court for an order removing the Confidential Material designation from any documents; and (c) to apply to the court for an order compelling production of documents or modification of this order or for any order permitting disclosure of Confidential Material beyond the terms of this Order.

9. Any document filed with the court that reveals Confidential Material shall be filed under seal, labeled with a cover sheet as follows: [case name and number] "This document is subject to a protective order issued by the court and may not be copied or examined except in compliance with that order." Documents so labeled shall be kept by the Clerk under seal and shall be made available only to the court or counsel. Upon failure of the filing party to so file a document under seal, the producing party may request that the court place the filing under seal.

10. Nothing in this order shall preclude a party from showing or disclosing to any person not listed in paragraph 5 of this order deposition transcripts, pleadings or briefs containing Confidential Material if the document containing such materials

has been masked or deleted so that no disclosure of Confidential Material occurs.