Allison Elizabeth **DOUBLEDAY**,
Plaintiff,

v.

**Robert RUH, et al., Defendants.**

**No. CIV S–92–1298 LKK GGH.**

United States District Court,
E.D. California.

June 11, 1993.

John Andrej Lavra, Longyear O'Dea and Lavra, Sacramento, CA.

Stewart L. Katz, Law Offices of Stewart L. Katz, Sacramento, CA.

## AMENDED ORDER

HOLLOWS, United States Magistrate Judge.

This case involves challenging questions concerning the applicability of work product immunity and state law privileges in protecting the prosecution files of deputy district attorneys employed by the County of Sacramento from discovery in a subsequent, related federal civil rights action. With understanding that there exist reasonable arguments on both sides of the issue, the court finds that work product immunity does not apply, and that the remaining state privileges are ineffective to preclude discovery in this federal action.

### BACKGROUND

Plaintiff Allison Doubleday was the subject of a criminal prosecution by the Sacramento County District Attorney's Office for assault and battery upon a peace officer. That case concluded with a not guilty finding. Plaintiff then filed the instant complaint against various officers of the Sacramento County Sheriff's Department under 42 U.S.C. § 1983 along with supplemental state claims, asserting that defendants conspired to use excessive force in arresting her on August 11, 1991, and that they conspired to coerce the district attorney's office to prosecute her criminally when it was not warranted. Other claims include excessive force, unreasonable detention, and arrest without probable cause. She also claims that defendants made false statements, tried to intimidate witnesses, and coerce plaintiff into stipulating to probable cause for her arrest.

Plaintiff has issued subpoenas duces tecum to three deputy district attorneys, Ernest Sawtelle, Chris Carlson, and Ron Johnson, and the custodian of records for the Sacramento County District Attorney's Office, Pat Fanelli. Plaintiff wishes to obtain the complete prosecutorial file from the criminal case against plaintiff, and then take the depositions of the attorneys. Defendants have refused, claiming protection of the requested documents under the work product doctrine, the federal common law official government privilege, Cal. Government Code § 6254(f), and Cal.Penal Code § 11101 [sic] [1], which they claim protect district attorney's files. The parties have "met and conferred," but were unable to resolve the dispute.

### DISCUSSION

I. *The Prosecutorial File in People v. Dou-*

---

1. The pertinent code section is § 11105.

*bleday* [2]

█ Plaintiff, through her subpoena duces tecum, seeks the district attorney's file used to prosecute plaintiff in the prior criminal case against her.

### A. Work Product Doctrine

1. *Was The Work Product Of The Terminated Criminal Litigation Prepared By Or For A Party To Both Prior And Subsequent Cases?* [3]

Defendants argue that the files are protected in this subsequent litigation; however, their cited case of *F.T.C. v. Grolier Inc.*, 462 U.S. 19, 103 S.Ct. 2209, 76 L.Ed.2d 387 (1983), expressly states that one condition of later protection is that the protected materials must have been "prepared by or for a party to the subsequent litigation." *Id.* at 25, 103 S.Ct. at 2213. The Supreme Court ultimately found that work product protection remained even though the prior litigation had terminated six years earlier. *Id.* at 28, 103 S.Ct. at 2215.[4]

█ In this case, the County of Sacramento is a party. It is being sued for an alleged custom and policy of the Sacramento County Sheriff's Department "to arrest and

charge persons with battery upon a peace officer and resisting arrest when law abiding persons are assaulted by a peace officer." Complaint, filed August 10, 1992, at 6. Plaintiff also claims that the County failed to adequately train, supervise and control officers. *Id.* In determining that the County had standing to bring this motion for protective order, this court previously ruled that the County had standing to move to quash the depositions of the deputy district attorneys because the County is an employer of those attorneys, and generally could assert the work product immunity on behalf of itself on account of work done by its attorneys. However, it is clear that in order for an entity to claim the immunity on behalf of its lawyers' work it must have the right to claim the immunity in the first instance, i.e., the lawyers must have created the work product for the County. In the particular circumstance of a previous criminal litigation and a subsequent civil litigation, the County is unable to assert the privilege on its behalf, and the deputy district attorneys are not "its lawyers" in the criminal or civil proceedings.

The County was not a party to the previous criminal case, and none of the individual defendants in this civil action were parties in

2. Plaintiff raised the issue of waiver of privilege for the first time at the hearing on this matter. Plaintiff argues that since the present civil counsel received the entire criminal file, any assertion of privilege by the deputy district attorneys or the County has been waived. However, the County was required to create a privilege log, and to this end it was necessary to turn the documents over to defendants' attorney. To the extent that defense counsel obtained the entire file at a time prior to when discovery was requested, there may have been a waiver, but the court is unwilling to address this issue when there are no facts of record.

3. Assertion of work product is not assertion of a privilege, but rather assertion of a qualified immunity. *Admiral Ins v. U.S.D.C. (Ariz.)*, 881 F.2d 1486, 1494 (9th Cir.1989). As such work product immunity is controlled by federal law, specifically, Fed.R.Civ.P. 26(b)(3). However, the fact that federal law controls does not make a discussion of state law entirely irrelevant where state actors are involved, and state law defines the status of the state actors in the litigation in which the work product was created.

4. Prior to *Grolier*, there was a split in authority concerning whether work product survived the litigation in which it was created. In *Duplan*

*Corp. v. Moulinage et Retorderie de Chavanoz*, 487 F.2d 480 (4th Cir.1973), the court held that work product immunity applied in subsequent litigation. The case did not mention whether the prior attorney was a party or a party's representative in the later case. *United States v. O.K. Tire & Rubber Co.*, 71 F.R.D. 465, 468, n. 7 (D.Idaho 1976), followed the *Duplan Corp.* rule in noting that work product immunity is not lost merely because the litigation was terminated and the work product is sought to be discovered in subsequent and unrelated litigation. *See also Burlington Industries v. Exxon Corporation*, 65 F.R.D. 26, 43 (D.Md.1974) (following *Duplan Corp.*). The split of authority in this area is clear, for in *United States v. International Business Machines Corp.*, 66 F.R.D. 154, 178 (S.D.N.Y.1974), the court recognized the differing views but decided to follow the opinion that work product is only protected in the case where it was initially prepared. It may be, however, that *Grolier* is not applicable to criminal litigations in any event. *See Powell v. United States Dept. of Justice*, 584 F.Supp. 1508 (N.D.Cal.1984) (discussed *infra*) (doubting that *Grolier* is applicable where termination of prior *criminal* litigation occurred over twenty years earlier with dismissal).

that criminal case. The plaintiff in the prior litigation was "the People of the State of California." It is true that the District Attorney of the County of Sacramento usually brings these cases, but the Office of the Attorney General may unilaterally decide to bring a case against a criminal defendant, and may do so where the district attorney's office has decided not to prosecute. Therefore, it cannot be held that the District Attorney or the County of Sacramento is synonymous with the "People."

The court is very much persuaded in its determination that the County was not a party to the criminal litigation in which the work product was created because the California Supreme Court has expressly so held. That court also held work product immunity inapplicable to a terminated criminal prosecution.

> Nevertheless, we have not been directed to, nor have we found, any authority holding that a public prosecutor—having completed his investigation and having announced, after failing to obtain an indictment, that no further action would be taken by him—is entitled to rely upon the work product doctrine when the fruits of his investigation become relevant to civil litigation to which he is not a party. The district attorney is not an "attorney" who represents a "client" as such. He is a public officer, under the direct supervision of the Attorney General. . . .

*Shepherd v. Superior Court of Alameda County,* 17 Cal.3d 107, 122, 130 Cal.Rptr. 257, 265, 550 P.2d 161, 169 (1976).

The *Shepherd* case, like the one at bar, involved the civil discovery of a criminal litigation file. It would be anomalous for this court to hold that the work product at issue here was initially created "by or for a party to the subsequent litigation" when the state supreme court has expressly held that the work product immunity does not apply to criminal files in such a situation, and that the present party (County of Sacramento) is not a "client" by or for whom the work product was prepared.

 Neither can the non-party district attorneys claim the work product privilege in this litigation. As clearly held by *In Re California Public Utilities Com'n,* 892 F.2d 778, 781 (9th Cir.1989), the work product immunity cannot be claimed by one who would ordinarily hold the right to assert the immunity [5] unless that person/entity is a party (or a party's representative) to the litigation in which the immunity is asserted. Simply being a subpoenaed witness is not enough. This result is also consonant with the *Shepherd* holding that the district attorneys are not "attorneys" who represent a "client" as such.

In sum, the County cannot assert the work product immunity because the work product was never prepared for it; the deputy district attorneys cannot assert the immunity because they are not parties to the present litigation, nor are they "representative of" a party in this litigation for whom the work product was prepared.

It is also important to note that the *Shepherd* court did not attempt to distinguish between the so-called "qualified work product" (facts derived from an attorney's investigation) and the "absolute" version (the attorney's mental thought processes). The basis of the *Shepherd* holding for work product purposes—"[t]he district attorney is not an 'attorney' who represents a 'client' as such. He is a public officer under the direct supervision of the Attorney General. . . ."—is equally applicable to both facets of the work product doctrine.

 Moreover, this court finds the reasoning of the California Supreme Court to be persuasive on its own terms. The fact that the prior litigation involved a *criminal* prosecution is a pertinent reason to refuse to extend work product protection here. One court thought this distinction significant enough to raise questions about it without actually deciding the issue. The Northern District of California stated:

> [I]t is at least arguable that the court should consider whether the requested documents would be available in *criminal* litigation with the government, rather than whether they would be available in the context of a hypothetical civil lawsuit. The

---

5. Attorneys who prepared the work product are holders of the work product immunity in addi-

tion to the party for whom the work product was prepared. *See* fn. 6, *infra.*

documents for which the exemption is sought were prepared in anticipation of criminal litigation, not civil litigation. There is no civil case paradigm this court can use to frame the privilege and, hence, it would have to construct one.

*Powell,* 584 F.Supp. at 1520. (emphasis in original). The potential economic vice of a less diligent attorney raiding the file of a previously diligent attorney is lacking in the context of a former criminal defendant, now plaintiff, seeking information from criminal files of a previous prosecution. As is generally the case in such a situation, and as is the case here, plaintiff's attorney is seeking information directly pertinent to the issues in this civil case, is not seeking the information because he is too "lazy" to develop the information himself, and is seeking information solely within the possession of the prosecuting agency.

Consequently, the County of Sacramento is not a present party for whom work product was prepared in a previous litigation, and the work product of the criminal prosecutors is not protected in this subsequent litigation.[6]

### 2. *In Any Event, Exceptions To Non–Disclosure Of Attorney Work Product Are Applicable Here*

 As noted previously, the pertinent authority divides work product into two general categories—"qualified" work product which protects an attorney's factual investigations, and "absolute" work product which protects an attorney's mental impressions, legal strategies and so forth. The party seeking the qualified work product has the burden of demonstrating a "substantial need" for the qualified work product, as well as an inability to obtain the information from other sources without undue hardship. *Upjohn Co. v. United States,* 449 U.S. 383, 400, 101 S.Ct. 677, 688, 66 L.Ed.2d 584 (1981). Even assuming that the County could assert a qualified work product claim here, the court finds that the information is disclosable pursuant to the substantial need/undue hardship test. The type of documents sought to be discovered by plaintiff that may arguably be protected by work product range from such things as written statements of the police officers made to the deputy district attorneys, other witness statements, photographs of the scene, and the like. The County does not oppose turning over items such as photographs or diagrams, but it does oppose turning over witness statements.

Again, this case involves colorable allegations that the police officers involved here manipulated evidence and the district attorneys so that the plaintiff would be improper-

---

**6.** The court desires to make clear that its holding in this case is limited to the situation presented here—the prior case is criminal, and the subsequent case is civil. Despite the wording of *Grolier* which is susceptible to an interpretation that an attorney who is not representing a party in a subsequent litigation is fair game for having his or her work product discovered, this court need not reach that issue. Obviously, where two civil litigations are involved, there is the potential for unfairness in that the attorney subpoenaed in the later litigation may have to disgorge a library of facts acquired through the expenditure of a good deal of resources over time. For example, an attorney specializing in environmental litigation may have spent much of his (or his former clients') resources in obtaining consultant reports in certain areas. Although the rationale for work product is at its strongest in a pending case in which the work product was created, *see Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), it seems more than a bit unfair in the subsequent case litigation scenario that the diligent attorney may be compelled to hand over these valuable facts simply because he or she is not representing a party in the later litigation.

In addition, the disconcerting language in *Grolier* that requires the potentially protectable work product prepared in a previous litigation to have been prepared for a *party* in the subsequent litigation in order to retain its protected status, appears to disrupt somewhat the commonly accepted law that the work product privilege equally belongs to the attorney who prepared it, and not just the party for whom it was prepared. *In re Special September 1978 Grand Jury,* 640 F.2d 49, 63 (7th Cir.1980); *Martin v. Valley National Bank of Arizona,* 140 F.R.D. 291, 321 (S.D.N.Y. 1991); *In re National Mortg. Equity etc.,* 116 F.R.D. 297, 301 (C.D.Cal.1987); *Duplan Corp. v. Deering Miliken, Inc.,* 61 F.R.D. 127, 130 (D.S.C. 1973), rev'd. on other grounds, 487 F.2d 480 (4th Cir.1973). Perhaps, in the situation where a non-party attorney is having his or her files raided without remuneration, the court could entertain a motion for protective order under Fed. R.Civ.P. 26(c).

Furthermore, it is important to note that this decision does not deal with the "informant's privilege," nor is it meant to encroach on the commonly accepted notion that work product of a sort can apply to *ongoing* criminal litigation.

ly prosecuted. If such allegations are true, the best evidence of these improprieties would be the contemporaneous statements of the witnesses, especially those of the sheriff's officers involved. While it is true that the sheriff's officers and other witnesses could be deposed, the passage of time and the present, potential bias of the defendants may color recollections such that what was said at the time cannot be accurately deciphered. In short, there is a substantial need for the contemporaneous information, and an undue hardship in attempting to reconstruct the information at this time.

The court now moves to the primary dispute—that of disclosure of the deputy district attorneys' mental impressions about the case and what was being told to them—information subject to "absolute" protection. However, not many concepts in the law are in reality "absolute"; rather there are exceptions to nearly every absolute rule.

■■■■ So called absolute work product is discoverable where an attorney's mental impressions are at issue and there is a compelling need for the material. *Holmgren v. State Farm Mut. Auto. Ins. Co.*, 976 F.2d 573, 577 (9th Cir.1992). *Holmgren* determined that the mental impressions sought in its case were "opinion work product," not subject to the lesser disclosure standards of qualified work product. The Ninth Circuit, although recognizing that certain authority had applied an absolute preclusion of disclosure of such mental impressions, nevertheless affirmed the disclosure of the opinion work product. It did so based on its finding that key issues in the case directly involved the mental impressions of the authors of the work product, and that the need for the material was compelling.

Here, plaintiff asserts that the main issue of her case is "the affect [sic] defendants had on the district attorneys' decision to prosecute. Plaintiff intends to prove at trial that the deputy district attorneys' evaluation of the criminal case against plaintiff was influenced by coercion and misinformation provided by defendants." Stipulation Re Discovery Disagreements, submitted May 10, 1993, at 19. It is clear that the mental workings of the defendant officers are at issue, especially

to the extent that the district attorneys' mental processes reflect those of the officers. To the extent that the prosecutor's notes reveal unease, irritation, or the like with respect to the pressures, if any, brought to bear against them by the individual defendants, those notes constitute the heart of plaintiff's case. A review of the inventory log indicates that the file contains notes of a prosecutor's conversations with the officers, and his thoughts of these conversations, as well as how they affected his handling of the case. *See* Stipulation Re Discovery Disagreements.

Plaintiff contends that a compelling need for the file is present, not only because of the potential importance of the notes containing the mental impressions, but also because an alternative means of discovery, such as a deposition of the deputy district attorneys, may only result in "self serving responses" which would not be as detailed or accurate as the file itself. The court agrees. Giving the attorneys an opportunity to respond to a question regarding their mental impressions without access to records would not be as conducive to a forthright answer as the file itself would provide. In addition, the deposition of former litigation counsel, even criminal litigation counsel, has its own set of problems, which may be avoided by production of the prosecution file. *See,* Section II below.

The court finds that the district attorneys' mental impressions are at issue in this case, and that plaintiff has demonstrated a compelling need for the prosecutorial file; therefore defendants must produce the prosecutor's file, including any information which reflects mental impressions or thought processes.

B. *Governmental Decision Maker Immunity*

■■■■ Defendants argue that the county prosecutors are immune from discovery because they are governmental decision makers. The court finds that this type of protection is not applicable to every employee of the government whose job requires him or her to make a decision. The cases refer mainly to high administration officials who make legislative or policy decisions. *See Franklin Sav. Ass'n v. Ryan,* 922 F.2d 209

(4th Cir.1991) (decision maker was Director of Office of Thrift Savings); *Kyle Engineering Co. v. Kleppe,* 600 F.2d 226 (9th Cir.1979) (protection applied to "head of government agency," the Small Business Administration administrator); *Sweeney v. Bond,* 669 F.2d 542 (8th Cir.1982) (decision maker was the governor); *United States v. Morgan,* 313 U.S. 409, 61 S.Ct. 999, 85 L.Ed. 1429 (1941) (immunity applies to top executive department officials); *Simplex Time Recorder Co. v. Secretary of Labor,* 766 F.2d 575 (D.C.Cir. 1985) (top Secretary of Labor officials not subject to deposition). Deputy district attorneys are not those type of persons to whom the privilege is applicable, and the defendants may not assert such a privilege herein.

### C. *Official Government Information Privilege*

 The defendants rely on *Sanchez v. City of Santa Ana,* 936 F.2d 1027 (9th Cir.1990) in their assertion of a federal common law privilege which protects against the disclosure of "official information." Defendants are correct in their assertion that such a privilege exists, and that the information sought here would be nominally encompassed within the privilege. However, they are incorrect in their assertion that the privilege, which is limited in nature, would preclude disclosure of the prosecution files. "To determine whether the information sought is privileged, courts must weigh the potential benefits of the disclosure against the potential disadvantages. If the latter is greater, the privilege bars discovery." *Sanchez,* 936 F.2d at 1033–34. The balancing approach of the Ninth Circuit is mirrored in this and other courts' previous determinations that a balancing test is appropriate when the disclosure of law enforcement files in a civil action is at issue. *See, Martinez v. City of Stockton,* 132 F.R.D. 677 (E.D.Cal.1990); *Kelly v. City of San Jose,* 114 F.R.D. 653 (N.D.Cal. 1987).

 The district attorney's file in the *People v. Doubleday* case consists of a variety of documents, all of which are described in the Stipulation Re Discovery Disagreements, submitted May 10, 1993.[7] Defendants assert that disclosure of the file would have a chilling effect on the district attorney's office. Prosecutors would hesitate to record their thoughts, trial strategies, or notes of witness conversations. Stipulation Regarding Discovery Disputes, Declaration of Timothy M. Frawley.

Defendants' concerns are not insignificant. However, if the needs of the case are "substantial" and even "compelling" with respect to overcoming a work product privilege as set forth above, it is difficult to believe that the appropriate balancing under an official information privilege would not also result in disclosure. Moreover, the court doubts that prosecutors who develop their cases in good faith are going to have much concern about lawsuits from disgruntled defendants. The burden that plaintiff must carry with respect to federal claims about improper prosecution in this case is high, one akin to a super-malicious prosecution. *Usher v. City of Los Angeles,* 828 F.2d 556, 561–562 (9th Cir. 1987). Courts realize that many criminal cases have problems of proof; neither the police nor prosecutors will be liable in a § 1983 case for prosecuting a criminal action simply because it has problems of proof. In addition, prosecutors enjoy an absolute immunity for actions taken in the normal prosecutorial role. *Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675 (9th Cir. 1984).[8] On the other hand, defendants cannot argue that the court should be concerned about the deterrent effect to prosecutors who might be tempted to bring and litigate criminal actions for an improper purpose.

 It is true that certain office documents may be sensitive, e.g., document number 14 might reveal pattern prosecutorial

---

7. The inventory itself states that defendants wish to protect this file on the basis of attorney-client privilege; however, defendants correctly argue here that the file is protected under the official information privilege, the work product doctrine, as well as certain California statutes. As stated previously, the County was not a party (client) to the criminal proceeding, and the prosecutors certainly did not represent the sheriff's officers.

8. It takes little speculation to know that prosecutorial immunity was the probable reason the non-party deputy district attorneys were not sued herein.

procedures in handling defense discovery requests; document number 19 might also indicate standard theories utilized pursuant to a particular defense challenge. The court has reviewed defendants' concerns as related by Timothy Frawley's Declaration, and finds that a protective order which allows only the parties' attorneys and certain members of their legal staff to have access to the manual will sufficiently protect any sensitive procedures from public disclosure.

The protective order utilized in *Martinez* is particularly applicable to the manual and is reproduced in the appendix of this decision.

### D. *Confidentiality of District Attorney's Records Under Government Code § 6254(f)*

■■■■ This court has discussed in previous cases at length whether federal or state law controls the assertion of privilege depending on the federal or state nature of the substantive claims. *Pagano v. Oroville Hospital,* 145 F.R.D. 683, 687 (E.D.Cal.1993). The rule is as follows: if federal claims are asserted, federal law controls; if state claims are asserted (as in a diversity action), state law controls; in a case with mixed federal and state claims, federal law is controlling. Because plaintiff has asserted a 42 U.S.C. § 1983 claim, federal law is controlling. As discussed in *Pagano,* 145 F.R.D. at 688, however, the fact that federal law controls does not rule out application of state law where it is not inconsistent with the federal law on the subject, and state law is persuasive in the context of the dispute.

Defendants assert protection under Government Code § 6254(f). Plaintiff contends that not only were the procedural requirements for invoking the privilege not met, but that the balancing test used in determining the scope of the privilege works in plaintiff's favor.[9] This section protects from disclosure the following:

> (f) Records of complaints to, or investigations conducted by, or records of intelligence information or security procedures

of, the office of the Attorney General and the Department of Justice, and any state or local police agency, or any investigatory or security files compiled by any other state or local police agency, or any investigatory or security files compiled by any other state or local agency for correctional, law enforcement, or licensing purposes, except that state and local law enforcement agencies shall disclose the names and addresses of persons involved in, or witnesses other than confidential informants to, the incident, the description of any property involved, the date, time, and location of the incident, all diagrams, statements of the parties involved in the incident, the statements of all witnesses, other than confidential informants, to the victims of an incident, or an authorized representative thereof, an insurance carrier against which a claim has been or might be made, and any person suffering bodily injury or property damage or loss, as the result of the incident caused by [various crimes], unless the disclosure would endanger the successful completion of the investigation or a related investigation. *However, nothing in this division shall require the disclosure of that portion of those investigative files which reflect the analysis or conclusions of the investigating officer.*

Other provisions of this subdivision notwithstanding, state and local law enforcement agencies shall make public the following information, except to the extent that disclosure of a particular item of information would endanger the safety of a person involved in an investigation or would endanger the successful completion of the investigation or a related investigation:

(1) The full name, current address, and occupation of every individual arrested by the agency, the individual's physical description including date of birth, color of eyes and hair, sex, height and weight, the time and date of arrest, the time and date of booking, the location of the arrest, the factual circumstances surrounding the ar-

---

9. The court finds no need to address the issue of whether defendants have met the state law procedural prerequisites to assert this privilege. Those state law requirements are not binding here, and this court is able to resolve the matter by implementation of a balancing test as discussed below.

rest, the amount of bail set, the time and manner of release or the location where the individual is currently being held, and all charges the individual is being held upon, including any outstanding warrants from other jurisdictions and parole or probation holds.

(emphasis added).

■ Section 6254(f) was recently interpreted in a restrictive manner by the California Supreme Court in *Williams v. Superior Court*, 5 Cal.4th 337, 19 Cal.Rptr.2d 882, 852 P.2d 377 (1993). However, there are several reasons why *Williams* does not apply to this case. First, assuming for the moment that California law should be applied to this case, the California Legislature provided that "[t]he provisions of this chapter [the California Public Records Act] shall not be deemed . . . to affect the rights of litigants, including parties to administrative proceedings, under the laws of discovery of this state . . . ." Cal. Govt.Code § 6260. This court will apply plain meaning to the statutory words—the Legislature made § 6254 inapplicable to civil discovery requests. *American Civil Liberties Union Foundation v. Deukmejian*, 32 Cal.3d 440, 451, 186 Cal.Rptr. 235, 242, 651 P.2d 822, 829 (1982). Civil discovery requests such as made by plaintiff here are to be processed pursuant to ordinary discovery law.

■ Even assuming that some lingering state privilege would be applied for state civil discovery requests, *see, Rubin v. City of Los Angeles*, 190 Cal.App.3d 560, 584–85, 235 Cal. Rptr. 516, 530 (1987), and this is a point not raised by defendants, it is clear that such a privilege would not be interpreted in federal proceedings as an absolute privilege. The court cannot find any absolute, analogous privileges in federal law, and to interpret it as such would be too anomalous with federal law setting forth a limited analogous privilege. *See* e.g., 5 U.S.C. § 552(b)(7) (Freedom Of Information Act law enforcement records exemption protecting certain records

from "mandatory disclosure" and incorporating standards for courts to determine whether release of the records will be harmful.) [10] Even the California courts construing the investigatory exception to its Public Records Act quoted at length above do not consider the § 6254(f) exemptions to be absolute exemptions from disclosure. *Williams*, 5 Cal. 4th 337, 19 Cal.Rptr.2d 882 at 887, 852 P.2d 377 at 382; *American Civil Liberties Union Foundation*, 32 Cal.3d at 449–51, 186 Cal. Rptr. at 240–41, 651 P.2d at 827–28 (1982).

Although *Williams* repudiated prior case law in California which had interpreted its Public Records Act in view of the FOIA amendments authorizing a broader disclosure of law enforcement records, this federal court in a proceeding controlled by federal law should not employ a state interpretation on the extent of privilege at odds with established federal law on the subject. While this court is sensitive to the need for comity and application of state law if possible, there are limits to comity, and those limits have been reached here. Therefore, this 'court will apply the standards for disclosure/withholding of otherwise protected records set forth in the FOIA: (1) no confidential sources will be revealed as a result of the report's release; (2) disclosure will not interfere with enforcement proceedings; (3) no person will be deprived of a fair trial; (4) release of the report will not constitute an unwarranted invasion of personal privacy; (5) secret police investigative techniques or procedures will not be revealed; or (6) the life or physical safety of law enforcement personnel will not be endangered.

■ The disclosure standards set forth above comport well with the type of balancing analysis undertaken for the official information privilege. The listed factors are precisely those that a court should take into account before releasing law enforcement information. The defendants herein have not demonstrated that any of the disclosure preclusion categories will be implicated by release of the information here, or in the alter-

10. The exemptions in the federal Freedom of Information Act are to be construed narrowly. *Federal Bureau of Investigation v. Abramson*, 456 U.S. 615, 630, 102 S.Ct. 2054, 2064, 72 L.Ed.2d 376 (1982). Indeed, the FOIA is an act that mandates disclosure to the general public unless the agency demonstrates that one of the harms listed in 5 U.S.C. § 552(b)(7) is probable. The situation here calls for even more liberality of disclosure in that the court would be ordering release of investigatory records, but restricting its dissemination to the parties in this case alone.

native, that a well crafted protective order would not reduce the risk of harm contemplated by the categories to zero.

Since the investigation of plaintiff was terminated, there is no danger to any ongoing investigation. Nor is there any claim of a related investigation which would prevent disclosure. Most of the FOIA factors relate to danger of exposing an ongoing investigation, and such is not the case here. Plaintiff's privacy is important since she is the subject of this particular file; however, she is the requestor of the file, therefore this factor is not implicated. In fact, the purpose for exemption from disclosure under § 6254(f) is to protect plaintiff's privacy. To the extent that secret police procedures or techniques would be revealed by disclosure, and this is doubtful, that information can be encompassed within a strict protective order. Safety of law enforcement personnel has not been raised as a problem.

Therefore, § 6254(f) does not preclude access to the documents requested by plaintiff.

### E. *Confidentiality of Records Under Cal. Penal Code Section 11101 et seq.*

■ Without much discussion, defendants assert that the statutory scheme tasking the state Attorney General with the creation and maintenance of a law enforcement central information data base protects the requested files from the district attorney's office. For two reasons the assertion is in error.

The statutory scheme does not apply to the requested records. Sections 11101–11104 require the state Attorney General to maintain a file for "all descriptions, information, and measurements of persons convicted of a felony ...". Sections added since the inception of the collection of information requirement add sexual offender histories as well as a record for those persons licensed to carry firearms to the informational items to be disclosed by the Attorney General. Plaintiff has not sought disclosure of the general informational records maintained by the Attorney General; she has sought case specific information directly from the district attorney. It is clearly overbroad to suggest that simply because some of the information in the district attorney's file may at some time be sent to the Attorney General, the information is encompassed by these statutory sections that relate only to collection of information and dissemination of that information by the Attorney General. Thus, this statutory scheme is not implicated by plaintiff's request at all.

Even if the code sections did apply, they could not be construed to preclude the requested information here. Section 11105 contains a compilation of those persons and entities to whom the collected information may be disclosed. Subsection (b) contains mandatory disclosures; subsection (c) contains discretionary disclosures. Of note in subsection (c) is the following: "The Attorney General may furnish state summary criminal history information upon a showing of compelling need to any of the following ... (6) The courts of the United States, other states or territories or possessions of the United States." Overlooking the fact that under principles of federalism, state legislatures are not free to legislate what a federal court may order produced in the way of documentation, this court has found a compelling need for the information for the purposes of this case.

Section 11101 *et seq.* does not in any way bar plaintiff from the information that is sought.

### II. *Deposition of Attorneys*

The request by plaintiff to depose attorneys in the district attorney's office implicates concerns in addition to the concerns of disclosure of privileged information. Those additional concerns are sufficient to preclude the taking of the depositions at the present time.

A threshold issue is what judicial approach should be taken when analyzing discovery requests directed to the deputy district attorneys.[11] These attorneys are not parties to the present action, but as third parties have been served by plaintiff with discovery pursuant to Fed.R.Civ.P. 45, as amended, effective December 1, 1991. Although Rule 45 is specifically aimed at facilitating discovery from third parties, it does not address the

---

**11.** Pat Fanelli is being subpoenaed in the capacity of custodian of records of the prosecutors' file. Therefore, this discussion does not apply to this individual.

special problems associated with seeking discovery from counsel. Therefore, in the present matter, the court must first determine the permissibility and parameters for requiring attorneys to comply with discovery requests where they have worked on the same side as the present defendants, and attempted to prosecute the present plaintiff, in a prior litigation.

■ Attorneys are not immune from discovery. The Federal Rules of Civil Procedure provide that "any party may take the testimony of any person," Rule 30(a), and the Rules do not create an absolute ban on discovery from attorneys based on the attorney-client privilege or work product doctrine, *see* Rules 26(b)(3), (c). The Federal Rules of Evidence preclude only the testimony of a presiding judge or participating juror, Rules 605, 606. There is little question that an attorney may be examined as any other witness where the attorney's conduct itself is the basis of a claim or defense. *See*, e.g., *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578*, 130 F.R.D. 348, 352 (D.N.J.1990), and cases cited therein. Moreover, an attorney may be called to testify as a fact witness in a case in which he or she is providing legal representation. 35 A.L.R.4th 810, Attorney Witness (1985, Supp. 1992).

While the subject deputy district attorneys are not litigation counsel in this matter and the question of disqualification does not arise, they do qualify as potential fact witnesses in these proceedings.[12] As the prosecuting attorneys for the underlying criminal case out of which the instant case arose, the prosecutors do have a relation to some of the incidents out of which the present allegations in

this litigation arose. However, in our adversarial system of litigation, the potential for disruption of that system exists when lawyers are haled into court to explain acts taken in performance of their duties. Cases involving discovery . of opposing litigation counsel are instructive in two ways: (1) they impose a threshold requirement whereby the moving party must demonstrate good cause for the requested discovery; and (2) this requirement is based on policy considerations partially applicable to discovery directed at counsel involved in prior litigation.

■ Discovery from opposing litigation counsel has been recognized as permissible under limited circumstances.[13] The burden is on the party seeking the discovery to demonstrate its propriety and need. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir.1986); see also, *N.F.A. Corp. v. Riverview Fabrics, Inc.*, 117 F.R.D. 83, 85 (M.D.N.C.1987); *Advance Systems, Inc. of Green Bay v. APV Baker PMC, Inc.*, 124 F.R.D. 200, 201 (E.D.Wis.1989); *Niagara Mohawk Power Corp. v. Stone & Webster Engineering Corp.*, 125 F.R.D. 578, 593 (N.D.N.Y.1989).[14]

The Eighth Circuit Court of Appeals concluded, in what has become a frequently cited test, that discovery of opposing trial counsel is appropriate only when: "(1) [n]o other means exist to obtain the information than to depose opposing counsel [citation]; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case." *Shelton v. American Motors Corp.*, 805 F.2d at 1327.

The *Shelton* court noted the long history of discouraging "the practice of forcing trial counsel to testify as a witness," citing *Hick-*

---

**12.** At the hearing, defense counsel could not state with certainty that these attorneys would not be called as witnesses at trial.

**13.** The issue is generally presented as a motion for protective order by parties seeking to preclude their attorneys' depositions or production. See, e.g., *Johnston Development Group, Inc. v. Carpenters Local Union No. 1578, supra*, 130 F.R.D. 348. Under Rule 26(c), the party seeking the protective order must show good cause to preclude or limit the discovery. Absent an explicit motion for protective order, some courts have considered requests to depose opposing counsel as triggering the court's inherent power to restrict discovery "for good cause shown"

under Rule 26(c). See, e.g., *Walker v. United Parcel Services*, 87 F.R.D. 360, 361 (E.D.Pa. 1980).

**14.** One court sought to measure the burden or oppression of the deposition by establishing "(1) the relative quality of information in the attorney's knowledge ...; (2) the availability of the information from other sources that are less intrusive into the adversarial process; and (3) the harm to the party's representational rights of its attorney if called upon to give deposition testimony." *Johnston v. Carpenters Local Union No. 1578, supra*, 130 F.R.D. at 353.

*man v. Taylor,* 329 U.S. 495, 513, 67 S.Ct. 385, 394 (1947). The court identified several policy reasons for imposing this threshold inquiry. These include the potential for disruption to the adversarial system, an increase in the time and costs of litigation, lowered standards of the legal profession, detraction from the quality of legal representation, and a chilling effect on attorney-client communications. *Shelton,* 805 F.2d at 1327. Additional reasons to limit discovery of opposing counsel include its potential for harassment and disqualification of counsel. *N.F.A. Corp. v. Riverview Fabrics, Inc., supra,* 117 F.R.D. at 85.

Thus, this court will apply the *Shelton* criteria to the discovery sought from the deputy district attorneys.

The court first examines whether there exists other means to obtain the requested information. As noted earlier, disclosure of the prosecutorial file is not only a good alternate means, but may also be more complete and accurate. The recordations of the criminal investigation may stand the test of time better than the individual attorney's memory of the case. These documents may also indicate whether there is some support for plaintiff's allegations. If they do allude to coercion by sheriff's officers upon members of the district attorney's office, then plaintiff may request the court to reconsider allowing depositions of these attorneys upon supplementary *Shelton* analysis. If the prosecutorial file does not suggest any support for plaintiff's assertions, then the court would be reluctant to allow further discovery in the form of attorney depositions.

The second *Shelton* factor, whether the information sought is relevant and nonprivileged, weighs against allowing the depositions at this stage of discovery. Although the information may be relevant, and as discussed earlier, is not protected, it is impossible to determine at this point whether the depositions would reveal relevant information, without first reviewing the prosecutors' files. This factor, therefore, directs the court back to the first factor. Since there is currently an alternate means for the requested

information, and the file itself would indicate relevance (or lack thereof), a further analysis of this factor is not appropriate at this time.

Again, although the attorneys' depositions may provide information crucial to the case, it is not yet necessary to take this step.

Therefore, because an alternate means of discovery exists in the form of the prosecutorial file, *Shelton* disallows the depositions of the subject deputy district attorneys at this time.[15]

## CONCLUSION

Accordingly, defendants' motion to quash depositions of the deputy district attorneys is granted; defendants' motion to quash production of the prosecutorial file in *People v. Doubleday* is denied. Defendants shall produce that file to plaintiff under the terms of the protective order attached as Appendix "A," within ten days of the filed date of this order.

IT IS SO ORDERED.

---

15. Should defendants list any of the deputy district attorneys as witnesses in this litigation, despite the statements of defense counsel at hearing that "he does not plan to do this," the court would allow the taking of the attorneys' depositions.