Betty CAMERON, Personal Representative of the Estate of Christopher Cameron, Plaintiff-Appellant,

v.

CITY OF PONTIAC, MICHIGAN, Michael McBride, and Vernon Roberts, Defendants-Appellees.

No. 86-1067.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 9, 1986.

Decided March 13, 1987.

Michael D.P. Burwell (argued), Bloomfield Hills, Mich., for plaintiff-appellant.

Gene A. Farber, Timothy Downs (argued), Detroit, Mich., for defendants-appellees.

Before KRUPANSKY, NELSON and RYAN, Circuit Judges.

KRUPANSKY, Circuit Judge.

Plaintiff-appellant Betty Cameron (appellant) appealed from the district court's order, 623 F.Supp. 1238, granting summary judgment in favor of defendants-appellees in this 42 U.S.C. § 1983 action pursuant to the precedent enunciated by the Supreme Court in *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985). Defendants-appellees are the City of Pontiac, Michigan, Michael McBride (McBride), and Vernon Roberts (Roberts). McBride and Roberts are uniformed City of Pontiac police officers.

On the morning of April 17, 1983 McBride and Roberts, while on regular patrol, were dispatched to a home within the City of Pontiac to investigate a reported burglary. Upon their arrival at the scene, an elderly woman ran from the front door of the residence onto the front porch, hysterically crying for help, and shrieking that "they broke in" and "they're trying to kill me."

The officers immediately ran to the rear of the house where they observed two black males, later identified as Christopher Cameron (Cameron) and Anthony Jackson

(Jackson),[1] exit and flee from the house. McBride and Roberts, after having identified themselves as police officers, ordered Cameron and Jackson to halt. The suspects ignored the command whereupon the officers drew their revolvers and each fired two shots in the direction of the fleeing suspects. After the shots were fired, Jackson surrendered to Officer McBride who placed him under arrest.

Cameron continued to run in an easterly direction to a railroad track. Roberts, who was in hot pursuit of Cameron, fired two additional shots. Cameron continued his flight along the railroad tracks. At one point, Cameron stopped for some unknown reason about 60 yards away from Roberts, who fired another shot.

Cameron resumed his flight paralleling the fence line of the M–59 expressway. Other officers approached from the opposite direction obstructing Cameron's escape route. He thereupon scaled the right-of-way fence onto the M–59 high speed expressway where he was struck and killed by a motor vehicle.

Subsequent investigation proved that Cameron was unarmed. Officers McBride and Roberts testified in their deposition that during the pursuit they had not observed a weapon. They further testified that they had not felt endangered during the incident.

On April 8, 1985, the appellant, Cameron's mother, commenced this § 1983 action against the City and Officers McBride and Roberts alleging that the officers unjustifiably used deadly force in attempting to apprehend Cameron. The defendants filed a motion to dismiss and/or summary judgment, and on December 27, 1985, the district court dismissed the action.[2] The plaintiff then instituted this timely appeal.

■ A plaintiff must establish three elements in order to recover in a § 1983 action

based upon *Tennessee v. Garner, supra.* First, a plaintiff must prove that the "victim" had been "seized" within the meaning of the Fourth Amendment. "The Fourth Amendment protects against 'unreasonable *seizures*,' not unreasonable or even outrageous conduct in general." *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir.1986) (emphasis added). Second, a plaintiff must show that the force used was unreasonable under the Fourth Amendment. "[T]he reasonableness of a seizure or method of seizure cannot be challenged under the Fourth Amendment unless there was a completed seizure...." *Id.* at 203. If a plaintiff has established that there had been a seizure and that the seizure had been unreasonable, he must support his claim by showing that the constitutional violation had proximately caused his injury. *Id.* at 202 (citing *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir.1983)).

In this case, the undisputed facts disclosed that Cameron was not seized within the meaning of the Fourth Amendment. In *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the Supreme Court determined "that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person." *Id.* at 16, 88 S.Ct. at 1877. "[A] person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497, *reh'g denied*, 448 U.S. 908, 100 S.Ct. 3051, 65 L.Ed.2d 1138 (1980).

We conclude that a person has been "seized" within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. Examples of circumstances that might indicate a seizure, even where the person

---

**1.** Cameron was 17 years of age at the time of this incident. The record did not disclose Jackson's age.

**2.** The district court ordered that the action be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). The court's opinion, however, alluded to several facts outside of the pleadings which were devel-

oped during pretrial discovery depositions. Under such circumstances, a motion to dismiss is more appropriately treated as a motion for summary judgment. Fed.R.Civ.P. 12(b). *Mozert v. Hawkins County Public Schools*, 765 F.2d 75, 78 (6th Cir.1985).

did not attempt to leave, would be the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.

*Id.* at 554, 100 S.Ct. at 1877 (footnote and citations omitted).

In *Tennessee v. Garner, supra,* the Supreme Court reconsidered the meaning of the term "seizure" and determined that "there can be no question that apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment." 105 S.Ct. at 1699. The Court then concluded that the use of deadly force to apprehend an unarmed fleeing felon who poses no immediate threat to the officer or others is unreasonable and gives rise to a cause of action under 42 U.S.C. § 1983 for violation of the decedent's Fourth Amendment rights.

This circuit recently interpreted *Garner* in *Galas v. McKee, supra.* In *Galas,* Officer McKee, a motorcycle patrolman with the Nashville police department, observed a vehicle traveling well above the speed limit. By using the motorcycle's flashing blue lights and siren, he signaled the driver of the automobile to stop. The driver, thirteen year old Galas, did not obey officer McKee's signal, and instead accelerated in an attempt to flee. During the ensuing high speed chase, Galas lost control of the automobile, crashed, and suffered severe and permanent injuries.

Galas thereafter filed an action under 42 U.S.C. § 1983 alleging, *inter alia,* a violation of his Fourth Amendment right to be free from unreasonable seizures. The district court granted the defendant's motion for summary judgment, and Galas appealed arguing "that the continuance of a high-speed pursuit of a traffic offender until the pursuit is terminated by a crash of the offender's vehicle constitutes an unreasonable seizure in violation of the Fourth Amendment." *Id.* at 202. This Court concluded that there had been no seizure:

"Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred."

In the instant case, there was no exercise of physical force. Thus, the remaining question is whether the defendant officer, by a show of authority, restrained the liberty of the minor plaintiff. Clearly, during the initial stages of the pursuit when the minor plaintiff decided to flee rather than to obey the defendant officer's directive to stop, the minor plaintiff was not restrained. Just as clearly, when the pursuit terminated in an accident with personal injury to the minor plaintiff, he was not restrained by, or as a result of, the officer's show of authority. Rather, the minor plaintiff's inability to leave was because he wrecked his automobile, and no seizure occurred.

*Id.* at 203 (citation omitted).

■ As in *Galas,* Cameron was not seized by Officers McBride and Roberts. Cameron elected to flee, not to be restrained. The officers' show of authority by firing their weapons, while designed to apprehend Cameron, did not stop or in any way restrain him. "Just as clearly, when the pursuit terminated in an accident [causing the death of] the minor plaintiff, he was not restrained by, or as a result of, the officer's show of authority." *Id.* Cameron's freedom of movement was restrained only because he killed himself by electing to run onto a heavily traveled, high speed freeway.

■ The use of deadly force standing alone does not constitute a seizure, and absent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment. Consequently, the reasonableness of the officers' use of their weapons in attempting to apprehend Cameron cannot be challenged under § 1983.

■ Assuming arguendo that a genuine issue of material fact existed as to whether

a seizure had been effected, the use of firearms by the officers obviously was not the proximate cause of Cameron's death. As noted by Judge LaPlatta in his opinion below:

> The Court concludes that the manner in which Christopher Cameron met his death was completely independent of the application of deadly force by Officer Roberts; the moving vehicle by which Cameron was struck was a distinct, unrelated, unexpected, superseding, but efficient medium. It was not reasonably forseeable [sic] to Officer Roberts that while attempting to escape from a lawful arrest, Cameron would leap over a fence, run on to a frequently traveled highway, and be fatally struck by a motor vehicle. It would be unfair, and possibly absurd, to permit a fleeing felon, uninjured by a pursuing police officer, to benefit from his unwise choice of an escape route.

(footnotes omitted). Even if Cameron had been seized by unreasonable means, his estate could not recover unless the constitutional violation was a proximate cause of his death. *Galas*, 801 F.2d at 202 (citing *Lossman v. Pekarske*, 707 F.2d 288, 290 (7th Cir.1983)).

Clearly, use of firearms by the officers in the attempted apprehension of Cameron was not, as a matter of law, the proximate cause of his death. He was killed when he, at his own election, ran onto a high speed freeway. The district court was correct in concluding that this was unforeseeable, and that it would be an absurd result indeed to permit recovery for a felon's unwise choice of an escape route. The summary judgment ordered by the district court in this case is, therefore, AFFIRMED.