**Joseph MOODY, Plaintiff,**

v.

**J.G. FERGUSON, III,
Individually, Defendant.**

**Civ. A. No. 3:89–154–16.**

United States District Court,
D. South Carolina,
Columbia Division.

Nov. 20, 1989.

Evert Comer, Denmark, S.C. and Chris Mills, Columbia, S.C., for plaintiff.

Joseph C. Coleman, Columbia, S.C., for defendant.

HENDERSON, District Judge.

Plaintiff Joseph Moody ("Moody") brought this action seeking damages from defendant J.G. Ferguson, III ("Ferguson") for deprivation of his federal constitutional rights in violation of 42 U.S.C. § 1983 and for the state-law tort of assault.[1] Moody alleges Ferguson violated his fourth amendment rights by using unreasonable force following a traffic stop and by charging him with assault with intent to kill without probable cause. Moody further as-

serts the use of unreasonable force constitutes assault under South Carolina law. The case was tried before the Court[2] on September 7 and September 8, 1989. On the evidence presented, the Court holds Ferguson liable on all three claims and awards Moody actual damages of $15,000 and punitive damages of $10,000. In compliance with Federal Rule of Civil Procedure 52, the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. The primary witnesses to the events giving rise to Moody's claims were Moody himself, his cousin O'Dell Archie ("Archie") and Ferguson. Ferguson's version of those events is in many respects inconsistent with that of the other two witnesses. Where material facts are in dispute, the Court has for the most part adopted the version of events related by Moody and Archie,[3] finding their testimony generally more credible based on the witnesses' courtroom demeanor and on Ferguson's memory lapses at trial and inconsistent descriptions of the events at various times since they occurred.[4]

2. While driving west on South Carolina Highway 78 near Denmark, South Carolina, around 8:30 or 9:00 p.m. on Saturday, January 24, 1987, Ferguson, a trooper with the South Carolina Highway Patrol,[5] passed a car driven by Moody heading east and another car, following Moody's, driven by Archie. According to Ferguson's testimony, the two cars were traveling "spit close." Ferguson made a "U–turn" to investigate and, while turning, observed Archie's car pull into the left lane as if to pass Moody's. At that point, according to Ferguson, Moody's car accelerated and the two

1. The complaint also asserts a claim for the state-law tort of malicious prosecution but the plaintiff withdrew that claim at trial.

2. Moody initially demanded a jury trial but at a pre-trial conference on August 30, 1989, both parties agreed that the action be tried nonjury.

3. Nevertheless, the Court notes that even if it viewed all evidence in Ferguson's favor and believed his version of the facts, it would never-

theless find him liable on the plaintiff's claims on the reasoning set forth below. *See infra* pages 630–33.

4. When confronted with inconsistencies at trial, Ferguson explained that he "testified to three or four different things, and for three or four different purposes."

5. Ferguson is now on disability leave from the highway patrol.

were traveling side by side when they entered a no passing zone at the town of Denmark. Both Moody and Archie deny that Moody's car sped up or that Archie was still attempting to pass when they entered the no passing zone. In any event, Archie's car was traveling in front of Moody's as they turned into the town of Denmark. After turning, Archie looked behind and saw Ferguson's patrol car, with blue light flashing, passing Moody's car. Archie pulled off the street onto the right shoulder and Ferguson pulled up behind him in an intersection. When Moody drove up, Ferguson yelled for him to "pull over" and Moody stopped his car behind Ferguson's patrol car on the street.[6] Ferguson then walked to the driver's side of Moody's car. After a brief exchange,[7] Moody put his car in reverse, at which point Ferguson reached inside and turned the ignition off. Unable to remove the keys because the car was still in gear, Ferguson withdrew his hand and moved it toward his right side where his revolver was located.[8] Moody then turned the ignition back on, shifted into reverse and stepped down hard on the accelerator.[9] He backed the car the length of the block and around a corner, then shifted into drive. Ferguson ran after him with revolver drawn and, when Moody's car first began moving forward, fired the gun, hitting the rim of one of Moody's wheels.

3. After leaving the scene, Moody drove, "scared and shaking," to his girlfriend's house. After a couple of hours, he left in her car and went looking for Archie. He found Archie at a convenience store, where a Denmark police officer arrived and told Moody the highway patrol was looking for him. Ferguson then drove up to the store, arrested Moody and took him to the county jail in Bamberg, South Carolina. En route, Ferguson told Moody that nobody "gets away" from him and commented that black people believe they all look alike to whites. When they arrived at the county jail, Ferguson cited Moody for reckless driving.[10] Bond was set at $200 and Moody was jailed.

4. On Sunday, January 25th, when Moody tried to make bail, he was told he could not be released until Monday because Ferguson had "put a hold" on his ticket. Later that day Archie went to visit Moody. When he emerged from the jail, he saw Ferguson in a patrol car parked behind his car and blocking its egress. Ferguson waved Archie over to the patrol car and told him to have a seat. Ferguson then asked Archie what he and "that little S.O. B." had been up to the night before and whether Moody was on drugs. When Archie said Moody had not used drugs, Ferguson responded Moody had to be on something to be "laughing and grinning." Fer-

---

**6.** On direct examination by the plaintiff's lawyer, Ferguson testified ·he stopped Archie and Moody to investigate "a possible following too close, a possible improper passing, a possible speeding to avoid being passed—all those things." On May 11, 1987, when Moody was tried for failure to stop for a blue light, *see infra* page 630, Ferguson testified he "originally stopped him for exceeding the speed limit and failing to allow a car to pass." Plaintiff's Exh. 13 at 4. He also testified at different times that the plaintiff was and was not driving recklessly before he was stopped. *See infra* note 10.

**7.** According to Moody, he asked Ferguson "What's the matter," to which Ferguson responded "Just pull over." Ferguson testified he also asked Moody for his driver's license.

**8.** According to Moody, just before reaching for the gun, Ferguson said "That's all right, you S.O.B., you don't have to pull over."

**9.** At trial, Ferguson testified Moody was holding onto Ferguson's hand when the car began to move backward, but this directly contradicts his testimony at a preliminary hearing on February 13, 1987. *See* Plaintiff's Exh. 11 at 7. Ferguson also testified that Moody's car spun him around when it sped off in reverse. At the February 13, 1987, preliminary hearing, however, Ferguson made no mention of this but testified he "got out of the way before it ever came back the first time." Plaintiff's Exh. 11 at 7. Ferguson's incident report states: "I jumped· out of the way of veh[icle] before it pick [sic] up to [sic] much speed." Plaintiff's Exh. 10 at 2.

**10.** Apparently, the reckless driving charge related to Moody's rapid departure after being stopped rather than his conduct before the stop, although at the reckless driving trial Ferguson testified Moody was driving recklessly both before and after the stop. *See* Exh. 13 at 4–5. At the February 13, 1987, preliminary hearing, Ferguson stated that Moody was not driving recklessly before the stop. Plaintiff's Exh. 11 at 8.

guson then said he did not want Archie, only Moody, and that he would teach Moody "this is not a laughing matter."[11]

4. On Monday morning Ferguson met with the local magistrate to obtain a warrant on a more serious charge against Moody. When the magistrate could not suggest a charge, Ferguson called the solicitor's office to ask what charge he could bring against Moody who had "tried to back over" him. He later received a call from the solicitor's office suggesting the charge of assault with intent to kill.[12]

6. On Monday, Moody was charged with assault with intent to kill and bond was set at $50,000. Unable to pay that bond, he remained incarcerated until March 2, 1987, when he was tried and convicted on the reckless driving charge. He was sentenced to thirty days in prison or a $200 fine, and he elected the thirty days, with credit for time already served. Following his conviction, Moody was returned to confinement to await trial on the assault with intent to kill charge. On March 9, 1987, the solicitor "nol prossed" the assault charge with leave to indict on a lesser offense. On March 10, Ferguson obtained a warrant for failure to stop for a blue light, bond was set at $1,000 and Moody was released. On May 11, 1987, Moody was tried on the new charge which was then dismissed on the ground of double jeopardy.

7. The Court finds the plaintiff suffered substantial injury as a result of the defendant's acts. He suffered a degree of fear and emotional distress when Ferguson shot at his car. In addition, because of the $50,000 bond set on the assault charge, he was unable to obtain his release from the time of the arrest on January 24, 1987, until the lesser charge was filed and lower bond set on March 10, 1987, a period of approximately six weeks. Before his incarceration, Moody was employed by a heating and air conditioning company and earned $280 per week, excluding overtime. During his six-week incarceration, the plaintiff was prevented from working and also suffered the customary privations of imprisonment including separation from his children, other family members and friends. During his absence, his employer replaced him with a new employee and Moody was unable to find other employment for two weeks following his release. In addition, while he was incarcerated, Moody's electricity and telephone service were disconnected for unpaid bills. Finally, shortly after his release Moody was evicted from his apartment for past due rent.

## CONCLUSIONS OF LAW

1. The defendant is liable under 42 U.S.C. § 1983 for depriving the plaintiff of his fourth amendment right not to be subjected to excessive force.

"[Where an] excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protection of the Fourth Amendment, which guarantees citizens the right 'to be secure in their persons ... against unreasonable ... seizures' of the person." *Graham v. Connor,* —— U.S. ——, ——, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443, 454 (1989). "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of ' "the nature and quality of the intrusion on the individual's Fourth Amendment interests" ' against the

---

**11.** Ferguson testified at trial and at the February 13, 1987, preliminary hearing that during the conversation Archie told him Moody sped up to prevent Archie from passing him on Highway 78 and that they were "horseplaying." *See* Plaintiff's Exh. 11 at 7. This is contradicted by Ferguson's incident report which states: "Archie says not but they were probably playing." Plaintiff's Exh. 10 at 2. The report is dated January 25, 1987, but Ferguson testified he did not write it until Wednesday or Thursday of the following week.

**12.** Solicitor Robert W. Harte testified at trial that he did not specifically remember Ferguson's call but that at some time Ferguson stated Moody had not intended to hit him but was only trying to escape. At the February 13, 1987, preliminary hearing, Ferguson indicated Moody was not intentionally trying to run him over and that "all he was wanting to do was go." *See* Plaintiff's Exh. 11 at 7. At trial, Ferguson testified at one point that he thought Moody was trying to injure him and at another that he did not think so.

countervailing governmental interests at stake." *Id.* —— U.S. at ——, 109 S.Ct. at 1871, 104 L.Ed.2d at 455 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8, 105 S.Ct. 1694, 1699–1700, 85 L.Ed.2d 1 (1985) (quoting *United States v. Place*, 462 U.S. 696, 703, 103 S.Ct. 2637, 2642, 77 L.Ed.2d 110 (1983))). Assuming that Ferguson had an articulable suspicion to stop Moody, *see Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), and, further, that he had probable cause to arrest him for reckless driving when Moody sped away, the Court nevertheless finds Ferguson's use of his revolver was unreasonable under the fourth amendment standard set forth in *Graham v. Connor.*

In *Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985), the United States Supreme Court held that the use of deadly force is not reasonable under the fourth amendment "unless it is necessary to prevent the escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." 471 U.S. at 3, 105 S.Ct. at 1697 (emphasis added). Neither prong of this test has been met here. First, there was no reason for Ferguson to believe deadly force was necessary to prevent Moody from escaping. He had known Moody for years and should have anticipated little difficulty in locating him later, as in fact he did.[13] More importantly, Ferguson had no reasonable ground to believe Moody posed a threat to anyone's physical safety. Moody was, to all appearances, neither armed nor dangerous. As Ferguson himself admitted, Moody's only apparent purpose in speeding away was to escape as fast as possible. For these reasons, the Court concludes that Ferguson violated

Moody's fourth amendment right by shooting at him as he drove away. In so holding, the Court rejects the defendant's argument that his use of deadly force cannot constitute a fourth amendment deprivation because it did not result in a seizure. In *Graham v. Connor*, the United States Supreme Court stated that the fourth amendment reasonableness standard applies "[where an] excessive force claim arises *in the context of an arrest or investigatory stop.*" —— U.S. at ——, 109 S.Ct. at 1871, 104 L.Ed.2d at 454 (emphasis added). The *Graham* Court further declared: "A 'seizure' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority ... in some way restrained the liberty of a citizen.' " *Id.* —— U.S. at —— n. 10, 109 S.Ct. at 1871 n. 10, 104 L.Ed.2d at 455 n. 10 (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 1879 n. 16, 20 L.Ed.2d 889 (1968)). When Ferguson stopped Moody's car, he accomplished a "seizure," triggering the fourth amendment's protections. When Ferguson subsequently fired his revolver in an attempt to prevent termination of the seizure, he used unreasonable force "within the context of" an investigatory stop, thereby violating Moody's fourth amendment rights.[14] In addition, the Court attaches no significance to the fortuitous fact that the bullet caused Moody no physical injury. That fact affects only the quantum of the plaintiff's damages, not the existence *vel non* of a constitutional deprivation.

2. The defendant is liable under 42 U.S.C. § 1983 for depriving the plaintiff of his fourth amendment right to be free from unlawful arrest.

**13.** At the February 13, 1987, preliminary hearing, Ferguson testified "I didn't know I could identify the subject then." This testimony, however, is not credible in light of the fact that, after Moody escaped, Ferguson, without additional opportunity to identify Moody, asked the local police to look for him.

**14.** In support of his argument, the defendant relied on *Cameron v. City of Pontiac, Michigan*, 813 F.2d 782 (6th Cir.1987). In *Cameron*, the defendant police officers had chased and fired

at the plaintiff's decedent who, while fleeing, ran on to a busy freeway and was struck and killed by an automobile. The Sixth Circuit Court of Appeals held the plaintiff could not recover for violation of the decedent's fourth amendment rights because there was no actual seizure of the decedent. Unlike the decedent in *Cameron*, the plaintiff here was actually stopped and, therefore, "seized" within the meaning of the fourth amendment.

■ It is well established that a plaintiff may recover under section 1983 against a law enforcement officer who causes his arrest without probable cause. *See, e.g., Joseph v. Rowlen*, 402 F.2d 367 (7th Cir. 1968). An officer has probable cause to arrest if the facts and circumstances are sufficient to warrant a prudent man in believing the suspect has committed the crime with which he is charged. *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975); *Fisher v. Washington Metropolitan Area Transit Auth.*, 690 F.2d 1133, 1138 (4th Cir.1982). The facts and circumstances at the time Ferguson obtained the warrant against Moody for assault with intent to kill provided no reasonable basis for such a belief. Ferguson himself admitted on several occasions that he did not believe Moody intended to do him any harm, much less to kill him, and the facts do not reasonably support an intent to kill. Nor can the defendant claim immunity because he relied on the solicitor's advice concerning which charge to bring against Moody. *Cf. Malley v. Briggs*, 475 U.S. 335, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (officer cannot rely on magistrate's issuance of arrest warrant when the warrant application is so lacking in indicia of probable cause that no reasonably competent police officer would have concluded a warrant should issue). This conclusion is especially compelling here because Ferguson provided the solicitor's office with misleading information when he said that Moody "tried to back over" him.

■ 3. The defendant is liable for the tort of assault. Under South Carolina law, an assault occurs when a person has been placed in reasonable apprehension of bodily harm by the conduct of another. *Gathers v. Harris Teeter Supermarket, Inc.*, 282 S.C. 220, 230, 317 S.E.2d 748, 754–55 (Ct. App.1984). Although a law enforcement officer is privileged to use lawful force, he is nevertheless liable for assault if he uses force greater than is reasonably necessary

under the circumstances. *See Jenkins v. Averett*, 424 F.2d 1228, 1231 (4th Cir.1970) (applying North Carolina law); *Stepp v. United States*, 207 F.2d 909, 911 (4th Cir. 1953) (action under Federal Tort Claims Act). As the Court has already concluded, the force employed by the defendant in shooting at the plaintiff's car was unreasonable under the circumstances.

4. The plaintiff is entitled to actual damages of $15,000.

Based on the earlier findings concerning the plaintiff's injuries,[15] the Court concludes the plaintiff suffered actual damages of $15,000 as a result of the defendant's misconduct.

5. The plaintiff is entitled to punitive damages of $10,000.

■ Punitive damages may be awarded under section 1983 if a defendant's conduct "is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 51, 103 S.Ct. 1625, 1637–38, 75 L.Ed.2d 632 (1983); *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir.1987). The Court finds that both constitutional deprivations here warrant an award of punitive damages. Because deadly force was so clearly unjustified under the circumstances, the Court concludes the defendant's use of his gun was in reckless, if not conscious, disregard of the plaintiff's right to be free from the use of excessive force under the fourth amendment. In reaching this conclusion, the Court notes that Ferguson's use of his revolver violated the highway patrol's own policies.[16] Similarly, the Court concludes that when Ferguson charged Moody with assault with intent to kill, having no reason to believe and in fact not believing that the Moody was attempting to hurt him, he acted in reckless disregard of Moody's right to be free from unreasonable seizure under the fourth

---

15. *See supra,* page 630.

16. The South Carolina Highway Patrol Manual states: "Patrol officers shall not use their firearm except when necessary in carrying out their

duties in a proper manner, in self defense of his/her life or lives of others." Plaintiff's Exh. 21 § 2D1(c). At trial, Ferguson testified he was justified in shooting because he was attempting to stop a fleeing felon.

amendment. In addition, although no finding of "evil motive" is necessary to support awarding punitive damages, *see Smith v. Wade, supra,* the Court concludes that the defendant's actions were motivated by personal ill will toward the plaintiff in that he acted out of anger at the plaintiff's defiance of his authority and with the intent to "teach him a lesson."

 The Court further concludes that punitive damages are warranted on the state-law tort of assault. Under South Carolina law, a plaintiff may recover punitive damages when the defendant's actions are willful, wanton or in reckless disregard of the plaintiff's rights. *Camp v. Components, Inc.,* 285 S.C. 443, 444, 330 S.E.2d 315, 316 (Ct.App.1985); *Fox v. Munnerlyn,* 283 S.C. 490, 493, 323 S.E.2d 68, 68 (Ct. App.1984). Punitive damages are allowable even when the defendant does not realize he is invading the plaintiff's rights so long as the act is committed in such a manner that a person of ordinary prudence would conclude it was done in reckless disregard of another's rights. *Camp,* 285 S.C. at 444, 330 S.E.2d at 316 (quoting *Hicks v. McCandlish,* 221 S.C. 410, 415–16, 70 S.E.2d 629, 631 (1952)). Based on the Court's earlier conclusion that Ferguson's use of his revolver was in reckless disregard of the plaintiff's right to be free from unreasonable force, the Court concludes that punitive damages are warranted on the state-law claim for assault.

For the foregoing reasons, the Court finds the defendant, J.G. Ferguson, III, liable to the plaintiff, Joseph Moody, for violation of 42 U.S.C. § 1983 and for the state-law tort of assault. In so ruling, the Court does not condone or encourage flight by persons lawfully stopped for investigation or arrest. Nevertheless, the plaintiff's flight cannot excuse the defendant's clearly unwarranted actions in firing his revolver and in charging the plaintiff without probable cause. In accordance with the findings of fact and conclusions of law set out above, the Court directs that judgment be entered in the plaintiff's favor in the amount of $15,000 actual damages and $10,000 punitive damages.

IT IS SO ORDERED.