John E. ROBERTS, Plaintiff,

v.

CITY OF FOREST ACRES and
Daniel Jacko, Defendants.

Civ. A. No. 3:94–1815–17.

United States District Court,
D. South Carolina,
Columbia Division.

Aug. 21, 1995.

S. Jahue Moore, Kirkland, Wilson, Moore, Allen, Deneen & Taylor, West Columbia, South Carolina, for plaintiff.

Isaac M. Stone III, Lewis, Reeves & Stone, Columbia, South Carolina, for defendants.

## ORDER

JOSEPH F. ANDERSON, Jr., District Judge.

This matter is presently before the court on cross-motions for summary judgment. The court heard argument on these motions on July 7, 1995 and, at the conclusion of the hearing, took the motions under advisement. Thereafter, both parties filed supplemental memoranda in support of their respective positions. For the reasons that follow, the Defendants' motion for summary judgment is granted, and the Plaintiff's motion for summary judgment as to liability is denied.

■ Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). It is well-established that summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir.1987). The party moving for summary judgment has the burden of showing the absence of a genuine issue of material fact, and the court must view the evidence before it and the inferences to be drawn therefrom in the light most favorable to the nonmoving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). The issue of liability in this action may appropriately be decided on cross-motions for summary judgment because the material facts are essentially undisputed.

### I. Facts

On February 6, 1994, at approximately 8:40 a.m., the Plaintiff, John Roberts, was stopped for speeding by Defendant Daniel Jacko, a police officer for the City of Forest Acres. Roberts was on his way to a com-

mand staff meeting of the South Carolina National Guard, which was scheduled to begin at 9:00 a.m. at Fort Jackson. He was running late for the meeting because he had been at the hospital all night visiting his father, who had recently suffered a heart attack. After Defendant Jacko pulled Roberts over, Roberts attempted to explain the circumstances behind his speeding, but Jacko insisted on writing him a speeding ticket. Apparently, Roberts became upset when Jacko would not accept his excuse, and words were exchanged. Roberts was eventually charged with disorderly person, in addition to speeding, and Jacko placed him under arrest and took him to the Richland County Detention Center. Roberts was released on a $726.00 bond later that day.

Roberts' case was called before a municipal court judge on March 10, 1994. At the beginning of the hearing, Jacko offered to drop the disorderly person charge, but Roberts' counsel instead requested a finding of not guilty based on a lack of proof. Jacko had no objection, so the judge formally made a finding of not guilty on the disorderly person charge. In addition, Jacko reduced the speeding charge from 62 m.p.h. in a 40 m.p.h. zone to a lesser two-point speeding violation. Roberts entered a plea of not guilty to the lesser charge and the trial of that offense proceeded. At the conclusion of the trial, the judge dismissed the charge against Roberts because the judge determined that under South Carolina law Roberts was immune from arrest for speeding, because "[h]e was in the discharge of military duties" at the time of the arrest. Defs. Ex. 1, at 14, ll. 11–12 (transcript of speeding trial before municipal court judge).

The Plaintiff filed this lawsuit on July 1, 1994 under 42 U.S.C. § 1983, alleging that he was wrongfully arrested by Defendant Jacko. In addition, the Plaintiff's complaint includes claims under South Carolina law for false imprisonment, assault and battery, intentional infliction of emotional distress, malicious prosecution, and negligence or recklessness. These claims are before the court under its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## II. Discussion

■ In essence, all of the Plaintiff's claims arise from his assertion that he was immune from arrest under South Carolina constitutional and statutory law because he was discharging his military duty at the time of the incident. Specifically, the Plaintiff cites to Article XIII, § 2 of the South Carolina Constitution, which provides, "The volunteer and militia forces shall (except for treason, felony and breach of the peace) be exempt from arrest by warrant or other process while in active service or attending muster or the election of officers, or while going to or returning from the either of the same." S.C. Const. art. XIII, § 2. The Plaintiff also cites to section 17–13–60 of the South Carolina Code of Laws, which similarly provides, "No person shall be arrested while actually engaged in or attending military or militia duty or going to or returning from such duty, . . . except for treason, felony or breach of the peace." S.C.Code Ann. § 17–13–60 (Law.Co-op.1985). The Plaintiff argues that the offense of speeding is neither treason, felony, or breach of the peace, and that he was therefore immune from arrest while going to his military duty.[1]

---

1. In further support of his claim of wrongful arrest, the Plaintiff also cites to section 25–3–120 of the South Carolina Code, which provides, "No officer or enlisted man of such force shall be arrested on any warrant, except for treason or felony, while going to, remaining at or returning from a place where he is ordered to attend for military duty." S.C.Code Ann. § 25–3–120 (Law.Co-op.1989). As the Plaintiff observes, this section does not contain an exception for breach of the peace, but only for treason and felonies. However, section 25–3–120 applies only to members of the South Carolina State Guard, a force that is "additional to and distinct from the National Guard." S.C.Code Ann. § 25–3–10. Because the Plaintiff is a member of the National

Guard, not a member of the State Guard, section 25–3–120 does not apply to this case.

In addition, the Plaintiff cites to sections 25–1–2160 and –2170 of the South Carolina Code in arguing that his arrest for speeding was unlawful. However, neither of these sections supports his position. Section 25–1–2160 provides, in relevant part, "No person belonging to the military forces of this State shall be arrested under any *civil* process while going to, remaining at or returning from any place at which he may be required to attend military duty." S.C.Code Ann. § 25–1–2160 (emphasis added). By its own terms, section 25–1–2160 provides an exemption only from civil arrest. However, civil arrest, the

Defendant Jacko argues that he is entitled to qualified immunity as to the Plaintiff's section 1983 claim, because it is unclear whether the immunity afforded to military personnel under South Carolina law applies to speeding violations. Indeed, Defendant Jacko argues that speeding is, in fact, a breach of the peace and that the Plaintiff was therefore not immune from arrest.

The Defendants acknowledge that there is no South Carolina case law interpreting the phrase "treason, felony or breach of the peace" or considering whether speeding is a breach of the peace for purposes of South Carolina's constitutional and statutory immunity at issue here. However, the Defendants cite to a South Carolina Attorney General's Opinion construing an analogous constitutional provision that grants a similar immunity to state legislators. Article III, § 14 of the South Carolina Constitution provides:

> The members of both houses shall be protected in their persons and estates during their attendance on, going to and returning from the General Assembly, and ten days previous to the sitting and ten days after the adjournment thereof. But these privileges shall not protect any member who shall be charged with treason, felony or breach of the peace.

S.C. Const. art. III, § 14. The Attorney General determined that "speeding as a criminal misdemeanor in South Carolina, represents a 'breach of the peace' ... and thus members of the General Assembly are entitled to no constitutional immunity from being stopped for, charged with and convicted of such offense." S.C.Att'y Gen.Op. No. 79–138, at 220 (Dec. 21, 1979). The Attorney General's Opinion provides a thorough analysis of the phrase "treason, felony or breach of the peace" and concludes that the phrase "encompasses *all crimes,* whatever their technical classification." *Id.* (citing 81A C.J.S. *States* § 45, at 386 (1977); 5 Am.

Jur.2d *Arrest* § 104; Annotation, *Immunity of Public Officer from Criminal Arrest,* 1 A.L.R. 1156 (1919)); *cf.* S.C.Att'y Gen.Op. No. ·2843 (Feb. 27, 1970) (concluding that members of the South Carolina National Guard are not exempt from arrest for the offense of drunk driving while in active service of the Guard, because that offense constitutes a "breach of the peace" within the meaning of S.C. Const. art. XIII, § 2).

Furthermore, as cited in the 1979 Attorney General's Opinion, the United States Supreme Court has rendered essentially the same interpretation of the legislative privilege in the United States Constitution. *Williamson v. United States,* 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278 (1908). In *Williamson,* the Court examined Article I, section 6 of the United States Constitution, which provides, in relevant part, "[The Senators and Representatives] shall in all Cases, except Treason, Felony and Breach of the Peace, be privileged from Arrest during their Attendance at the Session of their respective Houses, and in going to and returning from the same." U.S. Const. art. I, § 6. The Supreme Court reviewed the history of the phrase "treason, felony and breach of the peace" and held that the phrase was intended to exclude "all crimes from the operation of the parliamentary privilege, and therefore to leave that privilege to apply only to prosecutions of a civil nature." *Williamson,* 207 U.S. at 438, 28 S.Ct. at 167.

Numerous state courts have reached the same conclusion in construing similar provisions of their own state law. *See, e.g., People v. Flinn,* 47 Ill.App.3d 357, 5 Ill.Dec. 690, 692–93, 362 N.E.2d 3, 5–6 (1977) (holding that traffic violation is a "breach of the peace" within constitutional provision that exempts state legislators from arrest except for treason, felony, or breach of the peace, because the immunity applies only to civil arrests); *Ex parte Emmett,* 120 Cal.App.

provisions of which are generally contained in S.C.Code Ann. § 15–17–10 *et seq.* (Law.Co-op.1976), has no application to this case.

Section 25–1–2170 provides, in relevant part, "nor shall any officer or enlisted man be liable to a civil action or criminal prosecution for any act done while in the discharge of his military duty when such act is in the line of duty." S.C.Code

Ann. § 25–1–2170 (Law.Co-op.1989). Although the Plaintiff was on his way to a National Guard meeting at the time of his arrest, the court does not agree that his speeding was an act performed "in the line of duty." Thus, the immunity provided by section 25–1–2170 does not apply in this case either.

349, 7 P.2d 1096 (1932) (holding that rule exempting members of the legislature from arrest extends only to civil cases, not criminal cases). *See generally* Annotation, *Immunity of Public Officer from Criminal Arrest,* 1 A.L.R. 1156, 1156–57 (1919) ("It is provided by the Constitution of the United States, and by the constitutions of practically all of the states, that members of Congress, or of the state legislature, shall be exempt from arrest while in attendance at a session of their body, or while going to or coming from the place of meeting, except in cases of treason, felony, or breach of the peace. These exceptions are uniformly held to include all criminal offenses, so that the exemption applies only to arrest in civil cases.").

The Plaintiff replies by arguing that the law of this case is that his arrest was illegal under the laws of South Carolina, because the municipal judge who dismissed the charges against him based that decision on the state's constitutional and statutory immunity afforded to military personnel.

■ The court need not decide in this case whether speeding constitutes a breach of the peace for purposes of the state-law provisions affording immunity from arrest to military personnel, or the broader question of whether the immunity excludes all crimes and applies only to civil arrests. At the least, the law is sufficiently uncertain so as to support Defendant Jacko's defense of qualified immunity.

### A. Constitutional Claims Under Section 1983

#### 1. Qualified Immunity of Individual Officer

■ The contours of qualified immunity are fairly well defined in this circuit by the decisions of the United States Supreme Court and the Fourth Circuit Court of Appeals. As the Supreme Court provided in its oft-quoted definition of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Har-*

*low v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The defense of qualified immunity is premised on the concern that if government officials faced a significant threat of liability for performing discretionary tasks, then many persons would be discouraged from accepting the responsibilities inherent in public service, or public servants would be unduly inhibited from performing their duties. *See Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). "Especially in the context of police work, decisions must be made in an atmosphere of great uncertainty. Holding police officers liable in hindsight for every injurious consequence of their actions would paralyze the functions of law enforcement." *Pinder v. Johnson,* 54 F.3d 1169, 1173 (4th Cir.1995); *see also Rowland v. Perry,* 41 F.3d 167, 172 (4th Cir. 1994).

■ The touchstone of qualified immunity is the " 'objective legal reasonableness' of the [officer's] action assessed in light of the legal rules that were 'clearly established' at the time it was taken." *Anderson,* 483 U.S. at 639, 107 S.Ct. at 3038 (quoting *Harlow,* 457 U.S. at 818–19, 102 S.Ct. at 2738–39). In other words, an officer will be immune from liability under section 1983 if his actions "could reasonably have been thought consistent with the rights [he] is alleged to have violated." *Id.* at 638, 102 S.Ct. at 3038; *see also Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817–18, 86 L.Ed.2d 411 (1985) (holding that officer is "immune unless his actions violated clearly established law"). Moreover, as the Supreme Court stated in *Anderson v. Creighton,*

> the right the official is alleged to have violated must have been "clearly established" in a more particularized, and hence more relevant sense [than the general right to due process]: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.

483 U.S. at 640, 107 S.Ct. at 3039. The plaintiff in an action under section 1983 bears the "burden of establishing [the] critical issue that the right [allegedly] violated was clearly established under the stated standard."

*Clark v. Link,* 855 F.2d 156, 160–61 (4th Cir.1988) (citing *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3020–21, 82 L.Ed.2d 139 (1984)).

■ In the instant case, the Plaintiff has failed to prove that South Carolina's constitutional and statutory immunity for members of the military clearly established a right not to be arrested for the crime of speeding. Indeed, as discussed above, the Defendants have raised compelling arguments that the exception for "treason, felony or breach of the peace" encompasses all crimes and that the immunity thus applies only to civil arrests. Although the court declines to reach this issue of constitutional and statutory interpretation under South Carolina law, Defendant Jacko's actions certainly did not violate any "clearly established" rights of the Plaintiff under the United States Constitution. Accordingly, Defendant Jacko is entitled to qualified immunity on the Plaintiff's claim under 42 U.S.C. § 1983.

### 2. Municipal Liability

The Plaintiff's complaint also includes a claim against the City of Forest Acres under section 1983 for supervisory liability for the actions of Defendant Jacko. After due reflection, the court has determined that the Plaintiff's claim against the City also must fail, and that the City is therefore entitled to summary judgement.

■ This court's finding that Defendant Jacko is entitled to qualified immunity is not determinative of the City's liability under section 1983, because municipalities are not entitled to assert a defense of qualified immunity. *Giancola v. West Virginia Dep't of Public Safety,* 830 F.2d 547, 550 (4th Cir.1987); *see Owen v. City of Independence, Mo.,* 445 U.S. 622, 638, 100 S.Ct. 1398, 1409, 63 L.Ed.2d 673 (1980). Nevertheless, the law is clear that municipalities may not be held liable under section 1983 under principles of *respondeat superior.* "Rather, to establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." *Giancola,* 830 F.2d at 550 (citing *Monell v. Department of Social Services,* 436 U.S. 658,

690–92, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978)). In addition, a municipality may be held liable under section 1983 for failure to train its employees, but only if "the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 1204, 103 L.Ed.2d 412 (1989).

■ Of course, if there was no underlying constitutional violation on the part of the individual officer, there would be no liability on the part of the municipality that employed the officer. *Giancola,* 830 F.2d at 550. As discussed above, this court has decided not to reach the question of whether South Carolina's military immunity protected the Plaintiff from being arrested for speeding; therefore, the court never addresses the issue of whether the Plaintiff's arrest was constitutional.

■ Even assuming, *arguendo,* that the Plaintiff suffered a violation of his constitutional rights, the Plaintiff has failed to identify any policy or custom on the part of the City of Forest Acres that caused such a deprivation. The Plaintiff attempts to establish liability on the part of the City merely by alleging that "Defendant Jacko unlawfully arrested Mr. Roberts under city policy." Such a blanket allegation alone does not indicate that any city policymakers made " 'a deliberate choice to follow a course of action ... from among various alternatives,' " *Harris,* 489 U.S. at 389, 109 S.Ct. at 1205 (quoting *Pembaur v. Cincinnati,* 475 U.S. 469, 483–84, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986) (plurality)); therefore, that allegation cannot serve as the basis for municipal liability. Furthermore, the Plaintiff has not established that the City's failure to train its officers on the immunity at issue in this case amounts to deliberate indifference to the Plaintiff's constitutional rights. Again, as discussed above, it is not even clear that such immunity in fact prohibits military personnel from being arrested for speeding. Accordingly, the Defendant City of Forest Acres is also entitled to summary judgment on the Plaintiff's action under section 1983.

■ The Plaintiff also claims that the City is liable under section 1983 for denying his constitutional right to a reasonable bail. The Plaintiff complains that the bail was set by police officers of the City of Forest Acres, and not by a magistrate. In addition, the Plaintiff complains that he was required to post a cash bond, and that the City refused to accept a check from his attorney in lieu of cash; yet, when the City returned the Plaintiff's bond, they issued him a check and would not give him cash. Finally, the Plaintiff asserts that he had a right to be released on his own recognizance, but that the City never provided him a hearing to determine whether a personal recognizance bond would have been appropriate.

None of these allegations is sufficient to support a constitutional claim against the City under section 1983. The Eighth Amendment to the United States Constitution provides, *inter alia,* "Excessive bail shall not be required." U.S. Const. amend. VIII. Courts have generally held that the Eighth Amendment's prohibition against excessive bail applies to the states through the Fourteenth Amendment. *E.g., Sistrunk v. Lyons,* 646 F.2d 64, 66–67 (3d Cir.1981). The Fourth Circuit has stated that the test for determining whether bail is excessive is "whether bail is 'set at a figure higher than an amount reasonably calculated to insure that the accused will stand trial and submit to sentence if convicted.'" *United States v. Radford,* 361 F.2d 777, 781 (4th Cir.) (quoting *Forest v. United States,* 203 F.2d 83, 84 (8th Cir.1953)), *cert. denied,* 385 U.S. 877, 87 S.Ct. 158, 17 L.Ed.2d 105 (1966). In this case, the Plaintiff's required cash bail of $726.00 for the offenses of speeding and disorderly person was not unconstitutionally excessive. *See Ernst v. Borough of Fort Lee,* 739 F.Supp. 220, 226 (D.N.J.1990) (holding that $525.00 bail for arrest of motorist for driving a vehicle with a suspended registration, which amount was set pursuant to the municipality's standard bail schedule, was not excessive or unreasonable under the Eighth Amendment). *But cf. Wagenmann v. Adams,* 829 F.2d 196, 211–13 (1st Cir.1987) (holding that $500.00 bail for paperwork infractions of state's motor vehicle code and for disturbing the peace was excessive; however,

there was evidence that the officer who requested the bail of $500.00 knew that the arrestee had only $480.00 in his possession and that the officer purposefully requested that amount of bail so as to keep the arrestee in confinement).

■ The Plaintiff cites to section 17–15–10 of the South Carolina Code to support his claim of excessive bail. Section 17–15–10 provides, in part:

> Any person charged with a noncapital offense triable in either the magistrate's, county or circuit court, shall, at his appearance before any of such courts, be ordered released pending trial on his own recognizance without surety in an amount specified by the court, unless the court determines in its discretion that such a release will not reasonably assure the appearance of the person as required, or unreasonable danger to the community will result.

S.C.Code Ann. § 17–15–10 (Law.Co-op.1985). The Plaintiff argues that the City failed to comply with this statutory requirement, because he was never brought before a magistrate to set his bail or even to determine whether bail, as opposed to personal recognizance alone, was necessary. The court cannot agree that the City's failure to comply with section 17–15–10 supports a claim under 42 U.S.C. § 1983. The Fourth Circuit has explicitly held that "a section 1983 claim can only be sustained by allegations and proof of a violation of the Constitution or statutes of the United States and specifically may not rest solely on a violation of state statutes." *Clark v. Link,* 855 F.2d 156, 163 (4th Cir. 1988).

The Plaintiff in this action was not confined for an unreasonable length of time or required to post an excessive bail. Although the City's policy of requiring a cash bond may have been inconvenient, such an allegation is not sufficient to state a constitutional claim for purposes of Section 1983. Therefore, the City is also entitled to summary judgment as to this theory of the Plaintiff's case.

**B. State-law Claims**

■ Turning to the Plaintiff's claims under state law, the court must initially observe

that the South Carolina Tort Claims Act applies to all of the Plaintiff's causes of action under South Carolina law. Under the Tort Claims Act, an employee of a governmental entity who commits a tort while acting within the scope of his official duty is generally not liable, and the plaintiff must sue the governmental agency itself. S.C.Code Ann. § 15–78–70(a) (Law.Co-op.Supp.1994). However, if the plaintiff proves that "the employee's conduct was not within the scope of his official duties or that it constituted actual fraud, actual malice, intent to harm, or a crime involving moral turpitude," then the governmental agency is not liable, and the employee is personally liable. S.C.Code Ann. § 15–78–70(b); *see also id.* § 15–78–60(17). Furthermore, S.C.Code Ann. § 15–78–70(c) provides that where "the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant." Thus, the City of Forest Acres is technically the sole defendant for purposes of the Plaintiff's state-law claims. To the extent that the Plaintiff's complaint could be construed to allege conduct sufficient to hold Defendant Jacko individually liable, the following analysis also applies to him individually.

### I. False Imprisonment

The Plaintiff's first cause of action under South Carolina law is for false imprisonment. The tort of false imprisonment is simply "a deprivation of a person's liberty without justification." *Caldwell v. K–Mart Corp.,* 306 S.C. 27, 410 S.E.2d 21, 23 (App.1991), *cert. denied* (S.C. Jan. 7, 1992). To establish a cause of action for false imprisonment, a plaintiff must prove the following elements: "(1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was unlawful." *Id.* (citing *Andrews v. Piedmont Air Lines,* 297 S.C. 367, 377 S.E.2d 127 (Ct.App.1989)). Generally, a police officer who arrests an individual will not be liable for false imprisonment if the arrest was supported by probable cause. *See*

*Jones v. City of Columbia,* 301 S.C. 62, 389 S.E.2d 662, 663 (1990).

The court concludes that Defendant Jacko's arrest of the Plaintiff was supported by probable cause and that the Defendant City is therefore entitled to summary judgment on the Plaintiff's claim for false imprisonment. The court recognizes that South Carolina law follows the minority rule that the existence of probable cause is generally a question of fact to be resolved by a jury. *See Jones,* 389 S.E.2d at 663. However, under the unique circumstances of this case, the issue of probable cause is appropriate for the court to resolve on summary judgment. Here, the facts surrounding the Plaintiff's arrest are essentially undisputed. The only controversy involves a matter of law: whether South Carolina's constitutional and statutory immunity for National Guard members protects the Plaintiff from being arrested for speeding. As discussed at length above, this issue is at least sufficiently unclear so as to support Defendant Jacko's reasonable belief that the Plaintiff was susceptible to arrest for speeding. Thus, no action lies for false imprisonment.

### 2. Assault and Battery

Next, the Plaintiff claims that Defendant Jacko is liable for assault and battery arising out of the Plaintiff's arrest. In essence, the Plaintiff alleges that Defendant Jacko's placing his hand on the Plaintiff and placing the Plaintiff in handcuffs during his arrest amounts to an assault and battery. Under South Carolina law, "an assault occurs when a person has been placed in reasonable fear of bodily harm by the conduct of the defendant, and a battery is the actual infliction of any unlawful, unauthorized violence on the person of another, irrespective of degree." *Jones v. Winn–Dixie Greenville, Inc.,* 456 S.E.2d 429, 432 (S.C.Ct.App.1995) (citing *Gathers v. Harris Teeter Supermarket, Inc.,* 282 S.C. 220, 317 S.E.2d 748 (Ct. App.1984)). A police officer who uses reasonable force[2] in effectuating a lawful arrest

---

**2.** Of course, if a police officer uses excessive force, or "force greater than is reasonably necessary under the circumstances," he may be liable for assault or battery. *Moody,* 732 F.Supp. at

632. However, the Plaintiff here does not allege that Defendant Jacko used excessive force. In the Plaintiff's sworn statement, he alleges merely that Defendant Jacko "forced the cuffs around

is not liable for assault or battery. *See Moody v. Ferguson,* 732 F.Supp. 627, 632 (D.S.C.1989). As the court concluded in the above discussion of false imprisonment, Defendant Jacko's arrest of the Plaintiff was lawful because it was supported by probable cause. Therefore, Defendant Jacko's action in arresting the Plaintiff did not constitute assault or battery, and the City is entitled to summary judgment on those causes of action.

### 3. Outrage

▆▆▆▆ The Plaintiff's third cause of action under state law is for intentional infliction of emotional distress, commonly known in South Carolina as the tort of "outrage." To recover under the tort of outrage, a plaintiff must establish the following essential elements:

> "(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community'; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.'"

*Ford v. Hutson,* 276 S.C. 157, 276 S.E.2d 776, 778 (1981) (quoting *Vicnire v. Ford Motor Credit Co.,* 401 A.2d 148 (Me.1979)) (internal citations omitted). On the Defendants' motion for summary judgment on this claim, the court must decide, as an initial matter, whether the conduct complained of "'may reasonably be regarded as so extreme and outrageous as to permit recovery, and only where reasonable persons may differ is the question one for the jury.'" *Holtzscheiter v. Thomson Newspapers, Inc.,* 306 S.C. 297, 411 S.E.2d 664, 666 (1991) (quoting *Todd v. South Carolina Farm Bureau Mut. Ins. Co.,* 283 S.C. 155, 321 S.E.2d 602, 609 (Ct.App.

1984), *quashed on other grounds,* 287 S.C. 190, 336 S.E.2d 472 (1985)).

Although the circumstance involving the Plaintiff's ailing father are truly unfortunate in this case, Defendant Jacko's conduct, even viewed in the light most favorable to the Plaintiff, simply was not sufficiently outrageous or intolerable so as to support a reasonable finding of intentional infliction of emotional distress. Therefore, summary judgment is also appropriate as to that cause of action.

### 4. Malicious Prosecution

▆▆▆▆ The fourth state-law cause of action in the Plaintiff's complaint is for malicious prosecution. To prevail on his claim of malicious prosecution under South Carolina law, the Plaintiff must establish: "(1) the institution or continuation of original judicial proceedings; (2) by or at the instance of the defendant; (3) termination of such proceedings in the plaintiff's favor; (4) malice in the instituting or continuing of such proceedings; (5) lack of probable cause; and (6) resulting injury to the plaintiff." *Goodwin v. Metts,* 973 F.2d 378, 383 (4th Cir.1992) (citing *Eaves v. Broad River Elec. Co-op.,* 277 S.C. 475, 289 S.E.2d 414, 415 (1982)).

The court's reasoning in determining that Defendant Jacko is entitled to qualified immunity on the Plaintiff's section 1983 claim in this action is also fatal to the Plaintiff's malicious prosecution claim. Even assuming, for the sake of argument, that the Plaintiff's arrest for speeding was precluded by military immunity, Defendant Jacko's objectively reasonable, good-faith belief that no such immunity applied in this case defeats any claim that acted with malice in prosecuting the underlying case. In addition, as the court determined in analyzing the Plaintiff's claim for false imprisonment, probable cause existed for Defendant Jacko to arrest the Plaintiff for speeding and to prosecute him for that crime. Therefore, the Defendant's motion for summary judgment is also granted on the claim of malicious prosecution.

---

my wrists and bruised them a little bit." To the extent that the Plaintiff's allegations could be construed as an excessive force claim, Defendant Jacko's actions are insufficient, as a matter of law, to support a claim of assault or battery, given this court's conclusion that the Plaintiff's arrest was based on probable cause.

### 5. Negligence or Recklessness

 Finally, the Plaintiff's complaint includes a cause of action for negligence and recklessness. Under well-settled law, negligence is generally " 'the failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation; or doing what such a person, under the existing circumstances, would not have done.' " *Jones v. American Fidelity & Cas. Co.*, 210 S.C. 470, 43 S.E.2d 355, 359 (1947). Recklessness is generally defined as "conduct where the actor is in fact consciously aware that he is acting negligently." F. Patrick Hubbard & Robert L. Felix, *South Carolina Law of Torts* 42 (1990). Whether an individual has acted negligently on a particular occasion is determined from an objective perspective of reasonableness under the circumstances. *Id.* at 36.

After examining the allegations of negligence and recklessness in the Plaintiff's complaint, and viewing the facts in the light most favorable to the Plaintiff, the court must conclude that none of the Defendant City's agents or employees acted negligently in this case. As this court has repeatedly observed, Defendant Jacko's determination that the Plaintiff was not immune from arrest was objectively reasonable. Therefore, the City is also entitled to summary judgment on the Plaintiff's cause of action for negligence or recklessness.

### III. Conclusion

For all of the foregoing reasons, the Plaintiff's motion for summary judgment as to liability is denied, and the Defendants' motion for summary judgment is granted as to all causes of action.

IT IS SO ORDERED.